Berdolt v. Berdolt.

## WILLIAM P. BERDOLT V. MAMIE H. BERDOLT.

FILED DECEMBER 8, 1898.    No. 8507.

1. **Divorce:** CROSS-PETITION. It is competent in this state, in an action for divorce, for the defendant to file a cross-petition, in effect a cross-action for divorce, and the defendant may be accorded affirmative relief.

2. ———: ———. The charges made in a petition in a suit for divorce do not furnish proper and forceful grounds to be pleaded and urged in the cross-petition in the same action.

3. ———: SUFFICIENCY OF EVIDENCE. The evidence adjudged insufficient to warrant a finding for the plaintiff upon either of his two causes of action.

4. ———: EXTREME CRUELTY. A decree of divorce may be granted in this state for "extreme cruelty, whether practiced by using personal violence, or by any other means." (Compiled Statutes, ch. 25, sec. 7; *Walton v. Walton*, 57 Neb. 102.)

5. ———: ———. A false charge of physical incompetency or disqualification to consummate the marriage or fully perform marital duties may, under certain circumstances, and if thereby such mental disquietude or suffering is caused as to impair the health or threaten its injury, or as to render the further continuance of the marriage contract and life intolerable and impracticable, constitute extreme cruelty, within the meaning of the words as they are employed in our statutes on the subject of divorce.

6. ———: ———: EVIDENCE. The evidence in this case *held* to sustain a finding of extreme cruelty by the plaintiff toward the defendant.

7. ———: ALIMONY: EXCESSIVE ALLOWANCE: REMITTITUR. The permanent alimony ordered paid in the sum of $5,000 adjudged excessive, defendant in error allowed to file a remittitur of $3,500, and the decree thus changed affirmed. If remittitur is not filed, the decree of divorce is affirmed, and the branch of the cause in regard to permanent alimony reversed and remanded.

ERROR from the district court of Seward county. Tried below before BATES, J. *Affirmed upon filing of remittitur.*

R. S. *Norval*, Norval Bros., and D. C. *McKillip*, for plaintiff in error.

George W. *Lowley* and *Biggs & Thomas*, contra.

HARRISON, C. J.

The plaintiff in error commenced this suit in the district court of Seward county to obtain a divorce or dissolution of the marital tie which existed between him and the defendant in error. In his petition it was pleaded that the marriage of the parties occurred of date July 11, 1894, and that he had ever since that event conducted himself toward the defendant in error as a "kind, affectionate, and virtuous husband." The general averments of such a petition were followed by statements of two causes of action, one of which was to the effect that prior to and subsequent to the marriage, and of continuance to the time of the suit, the defendant in error was physically incapable of a consummation of the marriage; that there could at none of said times be complete sexual intercourse between the parties because of "incurable" personal and physical defects of the organization of defendant in error, and also for the additional reason that she was afflicted with "catarrh of the womb," which was incurable; that all of these matters were well known to defendant in error prior to and at the time of the marriage, and were unknown to plaintiff in error, and were by the former concealed from the latter. In the second cause of action it was complained that about December 25, 1894, defendant in error in a fit of anger struck the plaintiff in error and thereby caused him much pain and suffering. In the answer there were admissions of the marriage and some others of the matters alleged in the petition, but all the material statements of the two causes of action were denied; and there was further pleading, in the nature of a cross-petition, in which it was charged that the plaintiff in error was of exceedingly strong or unnatural sexual passion or desire, and that he urged and demanded and received of defendant in error extraordinary and excessive indulgence of his said propensity. It was also set forth in this portion of the answer, and as further basis for affirmative

relief to defendant in error, that "The said plaintiff, during the continuance of said marriage relation, wrongfully and maliciously charged this defendant with having deceived him, and repeatedly and continuously charged this defendant with having been diseased at the time of her marriage with the plaintiff, and of having certain incurable personal defects and malformations, which said charges and statements as made were wholly false and untrue; and that by reason of said false and malicious charges and statements this defendant was greatly humiliated, and plaintiff thereby caused this defendant great mental and physical pain and anguish. Defendant further avers that plaintiff was guilty of extreme cruelty toward this defendant by reason of the facts hereinbefore set forth, and defendant further avers that said plaintiff, during the continuance of said marriage relation, publicly talked and told divers persons that this defendant was diseased, and was afflicted with certain incurable disease and malformation, while this plaintiff was receiving medical treatment at Ashland, Nebraska, from a physician mutually agreed upon by the plaintiff and defendant's father, the expense of which was to be borne equally by plaintiff and defendant's father, and while plaintiff was all the time professing great regard and love for this defendant, he was, at the same time, at Seward, Nebraska, publicly making the aforesaid statements and charges, which were wholly false and untrue, and that by reason thereof this defendant has been greatly humiliated and disgraced, and has suffered great mental and physical pain and anguish." Also, that the defendant in error went, by agreement and with the concurrence of her husband, to Ashland for treatment for the disease with which she was supposed to be afflicted; and it developed on examination that she had in fact catarrh of the womb, and they were informed that it would require a treatment of from six or eight to twelve weeks, and that a cure could be effected. It appears in evidence that she was cured, or became entirely

well, but the recovery was not complete until after this suit had been instituted. It was further pleaded in this connection that plaintiff in error had agreed to await the results of the treatment to the extent of one year's time, if necessary, but did not do so, filed his petition herein, and therein made charges against the defendant in error, which were to his knowledge false and unfounded. The foregoing affirmative matters of the answer were pleaded as acts of extreme cruelty on the part of plaintiff in error toward defendant in error. It was further alleged in the answer that plaintiff in error was possessed of property of the aggregate value of $20,000 over and above liabilities and indebtedness. The prayer of the answer was for a divorce and proper alimony. To the answer a demurrer was interposed, which on hearing was overruled. The plaintiff in error then filed a reply, in which the new material matter of the answer was denied, and it was averred that he was not worth beyond his indebtedness to exceed $4,000. The issues were tried and the plaintiff in error denied relief. A decree of divorce was granted defendant in error, and all the household furniture was given to her, and the plaintiff in error ordered to pay to her the sum of $5,000. The case is presented to this court for the plaintiff by petition in error.

It is insisted that inasmuch as in the statutory provisions relative to actions to obtain divorces there is no provision which authorizes the presentment of a cross-petition or the granting of affirmative relief to defendants in such actions, none may be filed, and no such relief can be afforded. Section 11 of chapter 25, Compiled Statutes, subject "Divorce and Alimony," reads as follows: "Suits to annul or affirm a marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of equity; and the court shall have the power to award issues, to decree costs, and enforce its decrees as in other cases." In any action a defendant may set forth in the answer and is entitled to be heard

on as many grounds of defense and counter-claim as may exist in his or her favor. The counter-claim must be one arising out of the contract or transaction set forth in the petition, or connected with the subject of the action. (Code of Civil Procedure, secs. 100, 101.) Under similar general provisions, it has been adjudged competent for the defendant in an action of divorce to plead and maintain in effect a cross-action. (*Dodd v. Dodd*, 14 Ore. 338, and citations; *Wilson v. Wilson*, 40 Ia. 230.) Under the rules of the common law, a defendant may be entitled to a claim and receive affirmative relief, and in the absence of statutes on the subject this may be followed. (*Wuest v. Wuest*, 17 Nev. 217; *Blakely v. Blakely*, 89 Cal. 324.) In this state, to the extent I am informed, it is the practice universally observed by the bar, and in the district courts, to file cross-petitions for defendants in divorce cases, and to demand, and if there is sufficient cause shown there is granted, affirmative relief. In the supreme court the practice may be at the least said to have been recognized. (See *Wilde v. Wilde*, 37 Neb. 891; *Shafer v. Shafer*, 10 Neb. 468; *Greene v. Greene*, 49 Neb. 546; *Atkins v. Atkins*, 13 Neb. 271.) That it is a matter of established practice is proper to be considered, though not necessarily determinable of the question. (*Min Young v. Min Young*, 24 Weekly Law Bulletin [O.] 260.) We feel constrained to hold that cross-petitions are proper and may be filed in actions of divorce, and affirmative relief obtained.

One complaint of the answer or cross-bill was based on the charges made by plaintiff in error in the petition in this action, and the question argued is, can the defendant in the cross-petition declare, and successfully rely for affirmative relief, upon the charges in the petition in the same action. That such charges had been made might possibly afford material for suit by the defendant subsequent to the determination of the action in which they were made, but not for a cross-bill in the same case. (*Simons v. Simons*, 13 Tex. 468; *Haley v. Haley*,

74 Cal. 489.)   It is insisted that the evidence fully war-
ranted a finding for plaintiff in error on the allegations
of the first cause of action, and it was error that the
trial court did not adjudicate in his favor as to this
branch of the case.   The evidence did disclose that the
defendant in error was not entirely healthy at the time of
the marriage, and had for some considerable time prior
thereto· had a more or less continuous discharge from
the vagina, which evidenced a somewhat diseased con-
dition, and of this she had knowledge, but of its exact
character or significance, or that it betokened any dis-
ease, or that she was other than a perfectly healthy
woman she did not know.   The trouble had never caused
her any pain, uneasiness, or difficulty; hence she had not
thought much about it, or had paid very little attention
to it.   The evidence disclosed that the plaintiff in error
at the time of the marriage was a year or more than
thirty years of age, and the defendant in error was nine-
teen.   Neither of them desired that she should conceive
as the result of their union and intercourse; did not wish
any child to be born to them, or not until after the lapse
of some considerable time more than naturally it is usual
to expect such an occurrence or event.   The plaintiff in
error procured and carried with him on the wedding trip,
not, however, by pre-arrangement or with her knowl-
edge, some sulphate of zinc, and at night, the first night
of the marriage, after they had sexual intercourse, he
gave some to her for use; a certain amount dissolved in
a prescribed quantity of water to be injected into the
private parts for the purpose, she testified he. stated to
her, of prevention of conception.   It is his testimony
that he told her it was for the promotion of cleanliness,
and that with this latter purpose in view he had ob-
tained it; that he used it himself.   Its use was continued
by the wife, and more especially after it was discovered
that she had a discharge from the parts.   She then re-
sorted to it once and sometimes twice during the day.
There was testimony sufficient to induce a belief that

during the first few weeks of the married life of this couple there was sexual intercourse at the demand of the male almost every night; and subsequently two or three times every week, he stating to her that twice a week was as often as the best interests of his health would permit. It was of her testimony that she gratified his desires whenever he expressed a wish in that direction, and that he expressed himself as well pleased and entirely satisfied; that he said, after it was ascertained that she was not entirely free from disease, that it caused him no uneasiness or lack of enjoyment, and never faulted her, or made any objections to her or her physical condition, competency, or qualifications, until December 26 of the year they were married, and about six months after the wedding, at which time, in the evening or night-time after they had retired to bed, he, after about fifteen minutes in the bed, arose and said he could not sleep, and made the specific charges against her that she was diseased and malformed, and incurably so, that she was physically incapacitated thereby to perform her part in the married life, that his uneasiness and disappointment at her lack of response to his advances were ruining his health, and they must separate. The next morning a letter which he had written to her father and which read as follows:

"SEWARD, NEB., Dec. 27, 1894.

"*Mr. John Kribbeler, City*—DEAR SIR: Please read the enclosed pages. Mamie is badly afflicted with several diseases, which are ruinous to a man's health. Therefore I request that Mamie and I be separated to-day, in a peaceful and friendly manner, for the benefit of each other's future happiness. My advice would be to send her to a specialist of female diseases. I request a meeting—you and myself—at my residence at 7 o'clock this evening,"—

was delivered, and on that day the father, mother, daughter, and son-in-law met at the home of the young people, and after some considerable consultation about

a separation, to which all were opposed, except the plaintiff in error, and for which he at that time apparently was not anxious, if any other proper and satisfactory solution of the matter could be made, the agreement for treatment of the defendant in error by the physician at Ashland was concluded. The plaintiff in error testified that he knew that his wife was not healthy, or that she was not just as she should be physically, but did not say much about it for some months, but about October 10, 1894 (they were married, it will be remembered, July 11 of the year), he asked her about it, and made an examination, and from then sulphate of zinc was used once a day or oftener during a month or more, but without any apparent change for the better. Aside from this one matter it was shown that their life together was undisturbed by any unpleasantness or difficulty of any nature. Each treated the other with due consideration and kindness, and there was no fault-finding or cause given for it, except in one instance, the blow which in the second cause of action it was alleged the defendant in error struck the plaintiff in error. Of this more anon. Further in regard to plaintiff in error's first cause of action it was shown that defendant in error, within the number of weeks assigned as necessary for treatment, became cured, and continued, at the time of trial of this cause, a healthy, perfect woman. On some points relative to this branch of the case the evidence was in direct conflict, but there was ample to sustain the finding of the district court, and it will be allowed to stand.

In relation to the complaint of the second cause of action there was testimony to support a conclusion that it was a matter of playful or accidental occurrence, and was so treated and regarded by the immediate parties to it until the inception of this suit, when what may have been the real concurrent thoughts of the plaintiff in error were given in the pleading. The conditions of the evidence are such that the finding of the trial court must, under the prevalent rule, remain undisturbed.

Another question much mooted is the want of evidence to warrant the finding in favor of defendant in error on the allegations of the cross-petition. It may be said that the charges by plaintiff in error that the defendant in error was incurably diseased were false; that they were made and urged persistently and at inopportune times and places, not only in the presence of and to the defendant in error and near relatives or immediate members of the family, but to others of the community in which the parties resided; that they were thus given publicity. It was of the evidence that the plaintiff in error talked about the matter of his wife's physical short-comings, for such he viewed and termed them,—with his barber, not once, but a number of different times; and these continual complaints to her personally, and her knowledge that his assertion of her diseased condition had been given publicity by reason of his conversations, all combined, she states caused her much mental anguish and trouble, and bodily ill. That they did so might readily be concluded without any direct testimony to such effect. But there was the testimony, and we must accept the finding of the district court on the facts as warranted by the evidence; but in this connection it is further urged that conceding all these things to be true or established, there was not thus proven conduct toward the defendant in error by plaintiff in error which constituted "extreme cruelty" within the accepted definition of such expression or within its meaning as used in our statutes. In our law on the subject the statement is: "A divorce from the bonds of matrimony  *  *  *  may be decreed for the cause of extreme cruelty, whether practiced by using personal violence, or by any other means." (Compiled Statutes, ch. 25, sec. 7.) It would seem to require no more than a fair construction, or rather no construction, if the words employed be given their ordinary signification, which is proper, any conduct which is cruel in the extreme sense was the intention and is included, and if extreme cruelty can be practiced without a manual

or such threatened hurt to the physical organization, then actions of the nature disclosed herein may furnish cause for divorce. The definitions of cruelty, as used in the law of divorce, have been many, but it has been probably generally stated that to constitute it there must be actual personal violence, or the reasonable apprehension of it, or in another form that physical harm is the test of cruelty. It is said that the weight of authority now is to the effect that misconduct which tends to impair the health, or which creates an apprehension of bodily injury, is cruelty, although no personal violence is used. (9 Am. & Eng. Ency. Law [2d ed.] 788.) That extreme cruelty included conduct other than personal violence has been recognized by this court (*Powers v. Powers*, 20 Neb. 529), and to a lesser degree in some others; but in all there was an accompaniment of personal violence, or it was threatened. A false and malicious charge of adultery is within the definitions of cruelty. (9 Am. & Eng. Ency. Law [2d ed.] 797.) A malicious accusation of impotence may be cruelty. (*Barber v. Barber*, 7 Western L. J. [N. Y.] 277. The charge made was quite similar to the one in the case at bar. In Kansas one of the things for which a divorce might be granted was "extreme cruelty," and it was held that mental suffering which rendered the married life intolerable or destroyed its legitimate ends and objects was "extreme cruelty." (*Carpenter v. Carpenter*, 30 Kan. 712.) It was observed in the body of the opinion that "The legal question that arises upon these facts is, whether they constitute 'extreme cruelty,' or not, within the meaning of the divorce statute. It was formerly thought that to constitute extreme cruelty, such as would authorize the granting of a divorce, physical violence is necessary; but the modern and better considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation, and it is now very generally held that any unjustifiable conduct on the part of either the husband or the wife, which so grievously

55

wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other as to seriously impair the bodily health or endanger the life of the other, or such as in any other manner endangers the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty' under the statutes, although no physical or personal violence may be inflicted or even threatened."

The facts of the present case are different, but the charges made were ugly ones and certainly well calculated to, and did, if we may believe the evidence,—and the trial court apparently believed it,—destroy the defendant in error's peace of mind; and it would be difficult to imagine any further marital intercourse between these parties which could have been other than distasteful and intolerable to the defendant in error, or indeed to the other party. We think the case considered in the abstract comes within a fair reading of our statute on the subject. This particular case is not by its facts as satisfactorily within such a rule as may be some of a similar nature, but we feel constrained to conclude not to disturb the finding and adjudication on this branch of it made in the district court, although a contrary finding would not have been changed.

The decree of the trial court in regard to alimony was as follows: "The court further finds that the defendant be allowed alimony as follows: The entire household furniture and one Steinway piano, now in the residence lately occupied by the parties, all of the value of $1,000, and the sum of $5,000 in money, to all of which plaintiff excepts." It is strenuously urged that this was excessive, and the reversal of this portion of the decree in whole or in part is asked, if the decree, inasmuch as it awards a divorce, is approved. The allowance of alimony, especially the amount thereof, is within the discretion of the trial court, and unless there has been a clearly wrongful exercise of the discretion, this court will not interfere on the ground that there was an exces-

sive sum given. (*Wilde v. Wilde*, 37 Neb. 891.) "There is no fixed rule as to the proportion of the husband's property or permanent alimony to be decreed to the wife on granting a divorce.  *  *  *  The amount is to be just and equitable, due regard being had to the legal and equitable right of each party, the ability of the husband, the special estate of the wife, and the character and situation of the parties." (*Varney v. Varney*, 58 Wis. 19; *Smith v. Smith*, 19 Neb. 706; *Cochran v. Cochran*, 42 Neb. 612.) We need not quote from or summarize here the evidence on this branch of the case. A careful examination of it convinces us that the trial court erred in its allowance of alimony. The wife had contributed nothing to the common fund. It is true some furniture and household articles had been given to her, but it does not appear that anything had been contributed by or for her to the financial worth of the parties. The defendant in error may within twenty days file a remittitur of the sum of $3,500 of the amount of $5,000 ordered to be paid as permanent alimony. If done, the decree, as thus changed, is affirmed; if not done, the decree of a divorce to the defendant in error is affirmed, and the order for alimony is reversed, and the branch of the cause in regard thereto is reversed and remanded.

JUDGMENT ACCORDINGLY.

NORVAL, J., offered no opinion.