LILLIAN PHILLIPS, APPELLANT, V. HERBERT E. PHILLIPS, APPELLEE.

281 N. W. 22

FILED JULY 15, 1938. No. 30334.

John A. McKenzie, for appellant.

O'Sullivan & Southard, contra.

Heard before ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and KROGER, District Judge.

PAINE, J.

Plaintiff brought action for a decree of separate maintenance on the ground of extreme cruelty. The court dismissed her petition, and granted her husband an absolute divorce on the specific grounds of cruelty set out in his cross-petition, but granted to plaintiff certain household furniture and $3,000 permanent alimony, and an attorney's fee of $250, from which decree the plaintiff has appealed.

The three assignments of error are: (1) Error in dismissing her petition; (2) error in awarding a decree of divorce to defendant; (3) in fixing the sum of only $3,000 as permanent alimony.

The evidence discloses that the plaintiff has been married and divorced twice before, and was 44 years of age at the time of trial. The defendant had been married and divorced once before, and was 47 years old. They were married at Grand Island May 31, 1932, and lived together for about five years. No issue has been born as a result of any of these marriages. The defendant was very anxious to keep their marriage a secret, because it was so soon after his divorce, and did not want the other employees at Paxton & Gallagher's to know he was married. He had his telephone listed in the name of "E. Phillips." Defendant has worked for Paxton & Gallagher Company for 24 years, and during the time of their marriage drew a salary of $240 a month as their buyer of automotive equipment, and explains the listing of the telephone because he did not want traveling salesmen to call him at all hours of the night at his home.

Plaintiff complains that the husband was at times sullen and morose. She says that, for the last six months they lived under the same roof, he never spoke to her but once, when he brought home a Christmas turkey.

When friends visited them, the husband would mix up cocktails from the liquor he kept on hand, but did not drink much himself. He charges in his cross-petition that the plaintiff drank to excess at home and elsewhere, causing him great humiliation, which is sustained by the evidence.

In the decree entered November 2, 1937, the trial judge found generally that the defendant had conducted himself properly toward the plaintiff as a husband, but that the plaintiff had been guilty of conduct which amounts in law to extreme cruelty, and awarded the defendant an absolute decree of divorce; that the home at 4351 Mason street, Omaha, has been acquired since the marriage, and that, of the original purchase price of $2,800, the plaintiff contributed $1,000; that the remaining $1,400 and some $650 spent in repairs and remodeling were earned by the defendant since their marriage; that at the time of the marriage the plaintiff was possessed of stocks, bonds, and securities of the present market value of $1,122.53, and, in addition, about $200 in cash; that the defendant owns stocks, bonds, and securities of the market value of $2,914.64, and has acquired since his marriage 100 shares in the Fontenelle Brewing Company, of the market value of $200; that, in addition, the defendant has $1,104 in cash, and certain life insurance policies, the cash surrender value of which have increased $733.80 by premium payments since the marriage, and owns certain vacant lots in Council Bluffs and land in Colorado of the market value of $1,050. He owns an automobile worth $500, and household furniture of $400. The court awarded to the plaintiff, for her $1,000 interest in the home, for her interest in the household furniture, and for permanent alimony, the sum of $3,000, and, in addition, all household furniture and articles of ornament owned by the plaintiff at the time of her marriage, together with an attorney's fee of $250.

We will now consider the three assignments of error and the propositions of law in support thereof. The first error is in dismissing her petition for separate maintenance and granting the husband the divorce on his cross-petition. In some cases a divorce is refused to both parties.

In *Brown v. Brown*, 130 Neb. 487, 265 N. W. 556, no children were born to the union, and it was found that the plaintiff's allegation of extreme cruelty was not supported by a preponderance of the evidence, and her petition, as

well as the husband's cross-petition for divorce, was dismissed, and neither was granted any relief.

The statute authorizes a divorce from bed and board, which the plaintiff prayed for in the case at bar, but the husband in his cross-petition asked for an absolute divorce. It has been found in most cases far better for the parties to be granted an absolute divorce, with permanent alimony, than to be granted a separate maintenance.

In *McKnight v. McKnight,* 5 Neb. (Unof.) 260, 98 N. W. 62, it was held that whether a divorce from bed and board or an absolute divorce shall be granted is vested in the sound discretion of the trial court.

In *Sutherland v. Sutherland,* 132 Neb. 558, 272 N. W. 549, a decree granted the wife support and separate maintenance, but at a subsequent term of court the husband secured an absolute divorce, and the question came up whether it was error to grant the husband an absolute divorce without granting the wife any alimony. It is stated that awarding the wife separate maintenance did not prove satisfactory; that quite often much embarrassment is caused the parties by these partial dissolutions of the marital relation.

In *Moravec v. Moravec,* 123 Neb. 830, 244 N. W. 639, it was held that, although a divorce was denied to the wife and a divorce granted to the husband upon his cross-petition on the ground of extreme cruelty, the court may grant to the wife reasonable alimony.

In the case at bar, the evidence fully supported the trial court in awarding an absolute divorce to the husband upon his cross-petition.

We now come to the consideration of that branch of the case affecting the property rights of the parties. The third assignment of error is the objection of the plaintiff and appellant to awarding her the sum of only $3,000 as permanent alimony. In her brief it is set out that, as the plaintiff had invested $1,000 of her own money in the home which they purchased, and as the home is given to the defendant, that $1,000 is simply returning her own money

which she had before her marriage, and that the actual alimony granted is only $2,000.

Section 42-318, Comp. St. 1929, provides that the wife may be granted alimony in every case except only when the divorce was granted to the husband upon the grounds of adultery committed by the wife, and further provides that the alimony granted shall be just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and "all other circumstances of the case."

It was said in *Swolec v. Swolec,* 122 Neb. 837, 241 N. W. 771, that alimony had been granted in various sums, from one-half of the husband's property down to a small fraction thereof, and many Nebraska cases were reviewed therein. To consider "all other circumstances of the case," required by the statute, places the burden upon the court of making a patient, detailed study of every fact and circumstance in each case presented for disposition, and the plaintiff's counsel in her brief insists that the court take into consideration the wife's loss of interest in her husband's property, and in the comforts and luxuries of life which would have been enjoyed by her except for the enforced separation, as well as the social standing which she had by the marriage in the case at bar.

In a general way, a class of cases has been considered where the parties, possessing only health and ambition, were married in their youth and poverty, and after long years of joint efforts accumulated considerable property, and each has been equally responsible for the accumulations, representing years of work. When such a marriage is dissolved, very liberal alimony decrees have been awarded. In some cases the property is divided equally, even though the title to the farm stands wholly in the wife's name. *Bartunek v. Bartunek,* 109 Neb. 437, 191 N. W. 671. On the other hand, in the pen-written decree of S. B. Pound, trial judge in *Shafer v. Shafer,* 10 Neb. 468, 6 N. W. 768, he granted the husband the divorce, but found he had secured more from the farm of his wife than he was entitled to, and, there-

fore, he should pay to her $1,000 alimony, which was reversed by this court, and she received nothing, except $125 a year for the support of the two children of said marriage. Thus, we see that the amount of alimony always depends upon the facts in each particular case.

In a second class of cases, it is found that the results of years of married life have brought little property, but a large family, some being of tender years at the time of the divorce, and, the custody of the minor children being given to the mother, the alimony and support money granted is determined largely by the situation, and always lacks much of being adequate to meet the needs of either, but courts are powerless in many such cases.

There is a third class of cases, where the parties are mature, often experienced in domestic relations by reason of a former marriage or two, and where there have been no children as a result of the union. The case at bar falls naturally into this class. Let us examine our court's disposition of some of these cases.

We find that the duration of the marriage is a very important point. In *Walton v. Walton,* 57 Neb. 102, 77 N. W. 392, the parties lived together but six months; she did not contribute in any way to the accumulation of property, valued at $24,000. The insanely jealous temperament of the husband led to his extreme cruelty, practiced in many forms, and this court, in a very long opinion by Commissioner Ragan, affirmed a decree giving her alimony of $5,000, with attorney's fees of $700.

In *Barton v. Barton,* 126 Neb. 835, 254 N. W. 561, the marriage only lasted four months, whereupon the wife brought an action for separate maintenance on the ground of extreme cruelty, and the husband asked for an absolute divorce in his cross-petition. The husband's property was valued at some $55,000, and the wife amended her petition for separate maintenance and was granted an absolute divorce, with alimony of $6,500.

In *Berdolt v. Berdolt,* 56 Neb. 792, 77 N. W. 399, the parties were married in 1894; no children. They lived together

less than one year. The wife was given alimony of a Steinway piano and other furniture, all of the value of $1,000, and $5,000 in money. This court directed a remittitur of $3,500, leaving cash alimony of only $1,500. The value of the defendant's property was very much in dispute. In an ardent courtship he had written her a letter, found in the bill of exceptions at page 251, in which he told her he was worth $20,000, but finally, in the course of the trial, shrunk his clothing store at Seward and his mortgages and other property down to a value of only $3,576.39.

In *White v. White*, 112 Neb. 850, 201 N. W. 662, the parties were married in 1915, the husband being 60 and the wife 40 years of age, both previously married. The marriage was unhappy. Judge Shepherd, in writing the opinion of this court, said that they were set in their ways; "neither of them appears to have had the rare temper of mind and heart to take them over their rough places. * * * These parties did not measure up to the requirements of a successful second marriage experience." There were no children. This is one of the largest records brought to this court. The husband's property amounted to $110,000; the alimony given was $17,000. There was an antenuptial agreement for only $10,000. He contends she should be limited to alimony of only $10,000. It is said: "The course of judicial decision in Nebraska indicates a tendency on the part of courts to deal generously with the unsuccessful wife in those cases where the fault is not intentionally planned and maliciously practiced." This is especially true where the husband is at fault. The husband began the suit when the wife was sick, emaciated, suffering toxic goiter and pelvic ailment. Alimony of $17,000 was affirmed.

In the case of *In re Estate of Waller*, 116 Neb. 352, 217 N. W. 588, the parties were both over 60 years of age, were married in 1922, and lived together about a year in Omaha. Both had been married before, and each had children by the former marriage. The wife obtained a decree of divorce on the ground of extreme cruelty, with $1,000 alimony and $150 attorney's fees. Forty-three days after the

decree was rendered the husband died, and she brought action to secure the widow's share of his estate, valued at $22,000, on the ground that the decree of divorce would not become final until six months after it was entered. In the antenuptial contract which they had signed, it was agreed that if his wife survived him she should be paid $1,000 from his estate within six months after he died. The court found that the antenuptial agreement was procured by fraud, as the wife was a recent arrival from Germany and could neither write nor understand the English language, and did not know her lawful marriage rights at the time. It was held that the widow was entitled to the widow's share in the estate, less the sum of $1,000 already received by her as alimony.

Coming now to a consideration of marriages lasting more than a year, we have *Felton v. Felton,* 131 Neb. 488, 268 N. W. 341. The defendant was granted a divorce on her cross-petition. There were no children as the result of this marriage, although he had three children by a former marriage. While the land owned by the parties was encumbered by real estate mortgages to the amount of $35,100, yet they differed in the value of the equities of the seven tracts of land. The husband, drawing a good salary, which was much larger than in the case at bar, was directed to pay the wife $1,900, at the rate of $100 a month, additional to the $3,100 ordered by the trial court.

In *Bristol v. Bristol,* 107 Neb. 321, 185 N. W. 972, the parties lived together for about five years. The plaintiff was a widow, the mother of several children. The defendant was 48 years of age, and divorced from his former wife. No children were born to this union. At the time of the marriage the plaintiff owned two farms and considerable other property, and was only indebted in the sum of $200. The defendant conducted a garage, and owned only two second-hand automobiles, of the value of $500. Defendant at once undertook the complete management of plaintiff's farms, without very much success. He claims he enhanced the value of her property $8,000, but perhaps overlooked

the fact that they were compelled to sell a portion of her property, and she had become responsible for debts in excess of $3,600, and the trial court found that the defendant had not contributed over $1,650 to her property. Defendant appealed to this court, and plaintiff filed a cross-appeal on the ground that there was no authority in law to allow the husband alimony out of the wife's property. This court affirmed the trial court in giving the husband an automobile, truck, and tools valued at $650, and Liberty bonds worth $400, but found that the court erred in giving him an additional $600 as a charge against the property of the plaintiff, and that portion was eliminated.

In *Dickerson v. Dickerson*, 26 Neb. 318, 42 N. W. 9, the parties were married in 1861, and in 1886 the wife abandoned the husband and removed to the state of Arkansas, and refused to return. It is said that, even though a divorce is granted to the husband, except on the ground of adultery, he should not be permitted to retain all of the property, while she is put away to the charity of the world. The court finds the fair value of the husband's real and personal property to be $5,000, and awards her the sum of $1,400, in payments of $200 a year for seven years.

In *Mills v. Mills*, 88 Neb. 596, 130 N. W. 419, the parties were hard-working; the wife worked as cook in country hotels part of each year for 17 years. Defendant was a hard worker, but cruel, unfeeling, and harsh in his treatment of his wife. The wife secured a divorce for extreme cruelty after 30 years of married life. The farm and property were worth not to exceed $6,600. The wife, being 64 years old, infirm and weak, was granted $2,500 permanent alimony.

In the case of *Tietken v. Tietken*, 60 Neb. 138, 82 N. W. 367, the parties lived together six and a half years, and each had been married before. The husband was 63 and the wife 56 years of age at the time she brought action for extreme cruelty for striking and beating her and excessive use of intoxicants. The trial court found that defendant's property consisted of an Otoe county farm and other property,

all of the value of $9,679, and the award of $1,000 alimony to the wife was upheld by this court.

In the case of *Bigelow v. Bigelow,* 131 Neb. 201, 267 N. W. 409, no children were born to the union, although each had children by former marriages. The value of the property was found to be between $30,000 and $35,000, and the wife was granted an absolute divorce upon her cross-petition, and the alimony of $7,500 was increased $1,000 by this court.

Now, from this very inadequate survey of these few cases, where no children were born as a result of the marriage, and the property has been accumulated largely, if not entirely, by the husband, we find that our court has allowed alimony of less than 5 per cent., and up to 40 per cent., of the property, and the average is around 15 per cent. in this class of cases. Yet, each particular case must be determined solely by the evidence of the witnesses in that action.

In considering the amount of alimony that a court is to allow in such a divorce case, the court will take into consideration the estate of each party at the time of the marriage, and their respective contributions since, the duration of the marriage, the wife's loss of her interest in the husband's property by virtue of the divorce, the social standing, comforts and luxuries of life which the wife would probably have enjoyed except for the enforced separation, the conduct of the parties leading up to the divorce, and to which party the divorce is granted, their age and condition of health, and all other facts and circumstances, and award an amount in alimony which appears to be fair and equitable between the parties.

In the case at bar, the wife had property of the value of $1,322.53, and the husband's holdings were valued at $13,-107.24 at the time of marriage. There had been a shrinkage in values, so that after the trial it is claimed she will have property of the value of perhaps $1,300, and the return of the $1,000 she invested in the home, and cash alimony of $2,000. On the other hand, the defendant's counsel argue that, after he has paid the alimony of $3,000 and

the costs and attorney fees, he will have left property of a present value of less than $8,000.

As these parties are both capable and intelligent, and in good health, each having in the past been able to earn good wages, we have reached the conclusion that the disposition made of this case by the trial court was right, and its decree is hereby affirmed. In addition to the attorney fees heretofore allowed, of $250, the plaintiff's counsel is allowed $100 for services in this court.

AFFIRMED.