ORPHA L. JENSEN, APPELLEE, v. ANTON JENSEN, APPELLANT.

28 N. W. 2d 444

Filed July 18, 1947.  No. 32242.

*Herbert T. White* and *William H. Thomas,* for appellant.

*George W. Pratt,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and TEWELL, District Judge.

PAINE, J.

This was a contested divorce action, in which the trial court granted an absolute divorce to the plaintiff and gave her title to property they owned as joint tenants, but required her to pay off all the mortgage on this property and to pay the defendant husband $50 a month until she had paid him $1,000. From this decree the defendant appealed.

The defendant charged, first, that the decree of absolute divorce was granted upon the uncorroborated testi-

mony of the plaintiff, and assigned as his second error that in dividing the property an excessive amount was given to the plaintiff.

The evidence relating to the two assignments of error is so interwoven that it would be difficult to present the facts relating to the grounds for divorce and the division of the property separately.

The plaintiff and defendant were married May 4, 1944, after an acquaintance of about eleven years. The defendant had been previously married and had a grown son and a daughter by that marriage. The plaintiff had been married and divorced twice, and she had four children by her first marriage, the youngest of whom was a son, Joe, who was 20 years of age at the time of the trial.

At the time of the marriage the plaintiff had been working at the bomber plant for about a year, earning $135 a month after all deductions were made, and she continued working at this job for three months after she was married.

On the day of their marriage they purchased the property at 616 North Nineteenth Street from Walter Ehlers for $7,800. The deed, exhibit No. 1, being dated May 4, 1944, passed the title to them as joint tenants with right of survivorship, and each one, in a way, paid $1,000 in cash and gave a first mortgage to the Omaha Loan & Building Association for $3,500 and a second mortgage to Ehlers for $2,300.

The testimony of the plaintiff and defendant conflicts on every important point in this case, and this conflict shows up first in the fact that she testified that the defendant had but $268 cash towards his $1,000 payment (his bank statement shows $263.30) and borrowed $700 on his Packard car and $106 at the bank and $150 from the State Finance Company, which loans he afterwards paid off out of the proceeds of the rent from the property, while the defendant, on the other hand, testified that the plaintiff had only $698.88 to put in,

and that he paid, in addition to his share $26 for insurance, $37.50 for fixing up the papers, and $7.50 for examination of the abstract.

The property purchased was a brick duplex, with all furniture therein, having 14 rooms, there being seven rooms on each side; nine were single sleeping rooms, one two-room apartment and one three-room apartment, one of the apartments being occupied by the parties hereto, and there were three rooms in the basement. The rents received from the rooms, which were at all times rented, were about $216 a month.

The plaintiff testified that defendant treated her cruelly on several occasions, beating and slapping her. In March 1946 he asked her to divorce him and she refused. She said he repeated such acts of cruelty. Their quarrels seem to have come to a head early Sunday morning, August 18, 1946, when she testified that he kicked her out of bed and ordered her to get his breakfast at five o'clock, although he did not have to go to work that day. She did not have anything in the house but oatmeal and coffee. He threw the oatmeal on the floor, told her to pick it up, and told her to go out and buy groceries. She claimed that they had a bitter quarrel and that he knocked her down and she was afraid he was going to kill her. She telephoned for her son Joe, who had returned in January from three years' service with the Marines, and the defendant telephoned for the police. She testified that her arm was still blue from his beating of two weeks before. Her son, Joseph H. Aken, testified that he "got there a minute after the cops got there," and he saw bruises on her. He testified that this beating which she had taken from Jensen was discussed there by the police and Jensen and his mother.

Dr. Oliver M. Krogh, a chiropractor, testified that his records showed that Mrs. Jensen came to his office about August 18, 19, or 20, while he was out of town, but Dr. Allen was there. She came back again August

29 after Dr. Krogh had returned from his vacation. She was in a very nervous condition. She had numerous bruises on her body. Two-thirds of her forearm was black and blue, and on the right thigh there was a large black and blue area where she had been bruised. He treated her with heat treatments and waves to relieve her pain.

One of the renters living in their duplex testified that he heard a lot of talking in angry voices but did not pay much attention to it, and did not visit back and forth with them at all.

As to this occurrence on Sunday morning, August 18, the defendant testified generally that she accused him of stealing her money and he pushed her out of his way and she was going to kick him and he backed away and she fell down on the porch.

The evidence fully supports the trial judge in granting an absolute divorce to the plaintiff on the grounds of extreme cruelty, as provided in section 42-302, R. S. 1943.

We will now consider the assignment of error that the alimony granted to the plaintiff was excessive.

The record proves that they made a very profitable investment on their wedding day in this roominghouse, which yielded enough rent to pay off the second mortgage and reduce the first mortgage very materially. The plaintiff gave her entire time to running these apartments and sleeping rooms, doing a maid's work, getting meals for her husband, and doing everything in her power to make a success of this venture, the defendant continuing his regular employment as driver of a bus for the Street Railway Company, working his regular hours and in rush times putting in overtime at additional pay.

The evidence of the defendant is to the effect that he worked at his job as a bus driver from 5 a. m. to 2 p. m., and at the last only to 1 p. m., and that he put in his afternoons working around the duplex; that he helped paper all of the rooms, painted the whole place,

and that he built a garage in which to keep the automobile he owned and used as a family car. He testified that he never refused plaintiff a dollar at any time to spend on herself; that she could go to a beauty parlor at any time; and one time when she asked for $15 for a dress he gave her $20 and she went down and bought one costing $17 or $18.

To show how thrifty these people were, we find that the plaintiff claims that during the first 26 months of their married life the defendant collected all of the rents and paid all of the bills, as follows:

| | |
|---|---|
| 26 months' rents at $216 a month | $5,616.00 |
| 26 months on radio rentals | 141.20 |
| 26 months rental of washing machine | 450.35 |
| He collected plaintiff's wages at bomber plant | 405.00 |
| thus making total receipts | $6,612.55 |

The plaintiff admits that out of this income the defendant paid out the following items:

| | |
|---|---|
| Payments on the first mortgage | $2,200.00 |
| He paid off second mortgage in full | 2,365.90 |
| He paid gas bills | 149.00 |
| electricity | 252.00 |
| telephone | 96.60 |
| water rent | 56.00 |
| coal for heating seasons at $140 each | 280.00 |
| Total expenditures | $5,399.50 |

They differ slightly on the amount of coal consumed, and the defendant testified that the grocery bills were upwards of $50 a month, while plaintiff said $30 a month would cover that item.

There is no dispute at all as to the defendant's wages, for he shows that he earned in the last eight months in 1944, after their marriage $1,687.60 that in 1945 he earned, according to Government slip 2,965.95 and that for the first eight months in 1946 he earned 1,640.00

and that he received $75 a year for being president of the Relief Association, which for 28 months is _____ 175.00

making the total amount he earned from their marriage, May 4, 1944, until he left on August 30, 1946 _____$6,468.55 and since that date he has worked steadily, earning $185 a month.

Now, the defendant claims that he spent all of his earnings during the marriage on their family expenses, including such items as paying for papering and painting the entire roominghouse, building a garage, keeping up his automobile as a family purpose car, including painting it for $80. He mentions one item of repairs of $50, but as to necessary gas and oil and general items, nothing appears.

The trial court found that this duplex was purchased and owned by them as joint tenants, each advancing $1,000 to buy the property for $7,800, and then adds: "The balance of said purchase price has been paid from the income of said property, and there remains but $1410.00 to be paid upon said property to clear the same; that one-half of said property belongs to the plaintiff herein and the other half of the said property hereinbefore described should be given and awarded to the plaintiff as permanent alimony in this cause, so that all of said property, save and except the unpaid balance due upon the purchase price of the same, should be the sole property of the plaintiff herein, after plaintiff has paid to defendant the sum of $1,000.00 at the rate of $50.00 per month."

In the recent case of Munsell v. Munsell, 147 Neb. 590, 24 N. W. 2d 566, the defendant was also a bus driver for the same company, but in that case he turned over every check he earned to his wife, who handled all the cash during their seven years of married life. However, there we were also faced with a lack of satis-

factory records and the impossibility of clarifying their financial transactions. When such a marriage partnership ends in a divorce, the burden is thrown upon the courts to fix the proper amount of alimony. It is then necessary to attempt to untangle all their financial affairs, but the result can never be satisfactory to the litigants, the counsel, or the courts where there is such a lack of competent evidence as to their financial affairs.

In the case of Swolec v. Swolec, 122 Neb. 837, 241 N. W. 771, many Nebraska cases were cited in which the amount of alimony granted varied from one-fifth to one-half of the property involved, and certain rules were given for fixing the amount of the alimony.

In the case of Pierce v. Pierce, 96 Neb. 511, 148 N. W. 151, we have a case very similar to the one at bar, where the wife worked very industriously to help make money; there the parties started in on a rented farm and the wife milked the cows, made butter, fed and cared for the poultry, did the housework, as well as assisting in the farm work. They were both hard-working industrious people, each doing their full share of the work. The court found that, after the expenses of the trial, the defendant would have unencumbered property of $17,000, and raised the alimony granted by the district court from $6,000 to $8,500, giving her one-half of the net assets.

In the case of DeVore v. DeVore, 104 Neb. 702, 178 N. W. 621, where the parties had accumulated $29,717 by their joint efforts and the defendant had inherited from his father's estate $16,549, the court granted the plaintiff $17,200, and said there was no reason why the wife should be excluded from sharing in the property which the defendant had inherited.

In our opinion, the case at bar falls clearly within the third class of cases discussed in Phillips v. Phillips, 135 Neb. 313, 281 N. W. 22, in which mature parties, who are experienced in domestic relations by reason of

former marriages, and who have no children by the present marriage, seek a divorce.

The parties do not, and doubtless never will, agree on a division of their property. However, we believe their conduct for the first 26 months of their married life was that of good partners. Neither accuses the other of spending a cent foolishly, or of having any bad habits; early and late each worked for the joint success of their well-planned real estate investment. There is no evidence of either having any bonds, stocks, or savings accounts, and all the property that is shown is this roominghouse. The plaintiff's testimony that defendant never spent a cent of his earnings on her is not borne out. She made a number of trips to Missouri to visit relatives, and she overlooks the use and expenses of an automobile and its garage, and several other items already mentioned.

We have reached the conclusion that plaintiff should not be required to pay defendant $1,000, as ordered by the trial court, but that, on the other hand, the defendant is entitled to his one-half share in the equity in this roominghouse property.

The decree of the trial court is affirmed as to the part granting plaintiff an absolute divorce, and reversed as to the part ordering plaintiff to pay defendant $1,000, and the cause is remanded with directions that a decree be entered by that court to the effect that, as of the date of the entry of the judgment on the mandate, the plaintiff and defendant shall own this roominghouse property, and the furniture therein, equally as tenants in common, subject to the balance due on the first mortgage to the Omaha Loan and Building Association. Costs are taxed to the defendant.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.