VELDA J. ENO, APPELLANT, V. GORDON M. ENO, APPELLEE.

65 N.· W. 2d 145

Filed June 25, 1954. No. 33474.

*Perry & Perry, J. Jay Marx, Davis, Healey, Davies & Wilson*, and *Robert A. Barlow, Jr.*, for appellant.

*Ralph W. Slocum* and *Ginsburg & Ginsburg*, for appellee.

(1)

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

Plaintiff, Velda J. Eno, brought a suit for divorce against the defendant, Gordon M. Eno. The trial court granted a divorce to the plaintiff and made an allowance of alimony to the wife. The custody of the two minor children was given to the wife and an allowance made for their support during their minority or until the further order of the court. The plaintiff appeals, asserting the allowance of alimony and child support to be grossly inadequate. The defendant cross-appeals, asserting that the allowance of alimony is excessive.

The record shows that the plaintiff and defendant were married on January 18, 1930. Three children were born to the marriage, Gene Leroy, 20, Gordon Robert, 18, and Earl Eldon, 15. Gene Leroy is married and was not residing with either of his parents at the time the decree was entered. The custody of the other two children was awarded to the plaintiff. The trial court found that the parties had accumulated an estate of $50,000 since their marriage. Plaintiff was awarded $27,000 as permanent alimony, payable $225 per month, and the right to live in the family home for a period of 5 years, or until the youngest son dies or becomes self-supporting, or until the plaintiff remarries, whichever event is the sooner, without the payment of rent or taxes on the aforesaid property. An award of $100 per month was allowed for the support of the two minor children. She was also awarded the De Soto automobile she had in her possession. It is from this decree that the respective appeals of the parties have been taken.

The only questions to be decided in this case are the correctness of those parts of the trial court's decree fixing the alimony and child support. The evidence is ample to sustain the granting of a divorce to the plaintiff. Neither party complains that the evidence is in-

sufficient in this respect. The main dispute revolves around the finding of the value of the property accumulated by the parties. The trial court found it to be $50,000.

The real estate owned by the parties, briefly described, is as follows: (1) The family home known as 3611 Washington Street; (2) the former family home known as 4517 Hillside; (3) five residences in University Place; (4) Lot 8, Block 11, Eastmont Addition; and (5) Lots 38 and 39, Fairfax Addition. The above properties are all in Lincoln, Nebraska, and are more particularly described in the trial court's decree. We conclude from the record that the family home at 3611 Washington Street has a reasonable market value of $16,000 and a net value above the mortgage on the premises of $5,472.48; the former family home at 4517 Hillside, $8,500; the five residences in University Place, $30,000, with a net value of $10,051.12 over and above the existing mortgage of $19,948.88; the lot designated as Lot 8, Block 11, Eastmont Addition, $1,650; and Lots 38 and 39, Fairfax Addition, $800. The net value of the real estate holdings as shown by the record is $26,473.60.

Personal property concerning the value of which there was little or no dispute consists of the following: A 1949 De Soto automobile, $1,000; a 1951 Ford automobile, $1,400; a 1938 Chevrolet automobile, $100; a 1949 Ford automobile, $800; a 1952 Chevrolet automobile, $1,500; household goods, $3,500; and cash value of life insurance, $6,200. These items total $14,500.

The most difficult problem is the determination of the value of the Eno Insurance Agency. The evidence is very conflicting as to the method to be employed in fixing its value. We think the value of the leasehold at the place where the agency is located, including leasehold improvements, is $6,145.82. The net value of the office equipment and leasehold improvements is approximately $10,000. It appears from the evidence that the valuation to be placed upon the business of an insur-

ance agency is dependent to a great extent upon the expectation of being able to renew policies issued. This, of course, depends upon a number of factors, such as the nature of the business written, the reputation of the agency, the class of business written, and other more or less uncertain contingencies. The evidence shows that the Eno Insurance Agency has been progressively increasing its business since its inception. Insurance policies that are written directly are of greater value than those which are written through a broker. Evidence of persons in the business is in conflict as to the proper method to value the agency. Two qualified witnesses state that the agency is worth two and one-half times the annual net commissions earned. Another qualified witness states that the value of the agency is equal only to the total net commissions earned. The record shows that the agency produced a net income to the defendant of $16,261.48 in 1952. The agency received commissions of $10,624.73 from indirect writing companies and $13,541.49 in commissions from direct writing companies. It is fundamental that the nature and class of business written, the commissions earned, and the net income of the agency are factors to be considered in determining the value of the agency. Considering all the evidence and the factors to be considered in fixing the value, we conclude that the reasonable value of the agency, including both direct and indirect writing of policies, is approximately $24,166.22. The total of the items here discussed pertaining to the business of the Eno Insurance Agency is $34,166.22.

Many other items of property are listed. They include $4,000 of surplus notes in the National Auto Insurance Company; a share of stock in the General Insurance Agency; 7½ units of the face value of $7,500 in the Ivanhoe Trust, a mining venture; some government bonds, the number and amounts not definitely established; a $2,000 investment in oil leases; and other smaller items. In some instances the existence of these

items is not established; in other instances the value is not sufficiently shown.

We conclude that the property of the parties has a reasonable value of $75,139.82. This court has consistently adhered to the rule that in determining the question of alimony the court will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions that each has made thereto. Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508. The amount of alimony to be granted a wife is not to be determined alone from the property possessed by the husband. The husband's age, health, earning capacity, future prospects, and social standing are proper to be considered. Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173. The foregoing rules will be applied in considering the case de novo as we are required to do.

Plaintiff and defendant were married in 1930. Plaintiff was 19 and defendant 24 years of age at the time of their marriage. Defendant was attending college at the time and all the property they possessed was an old Ford automobile. Plaintiff was working, and defendant had part time employment while attending school. They started with little or nothing. After a few years defendant entered the insurance business and at the time of the trial had accumulated and acquired the property which we have heretofore discussed. Defendant served in World War II, during which period of time the plaintiff successfully carried on the insurance

business. On November 19, 1950, plaintiff was injured in a car accident. Prior thereto she had been seriously injured by tripping over a bicycle. She received a settlement of $3,500 for the injuries she suffered in the car accident, which appears to have been used for the payment of medical and hospital bills and in the purchase of an automobile. Plaintiff has had three operations involving her spine as a result of these accidents. She has a 35 percent total bodily disability resulting therefrom. The defendant was 47 years of age at the time of the trial and is in good health.

It would serve no useful purpose to recite the marital difficulties of the parties. While ample grounds sustain the petition of the plaintiff for a divorce, she has not been free from blame. The evidence shows that until shortly before the filing of the divorce petition she maintained a good home and was a good mother to her three boys. She became associated with feminine friends who were objected to for various reasons by the defendant. Plaintiff chose to continue the course she had been following. Friction continued and the divorce action resulted. The conduct of the plaintiff, though not sufficient to prevent her from obtaining a divorce, was a contributing factor to their marital troubles. She assumed that defendant was financially able to provide whatever she wanted. She exceeded a reasonable budget allowance and purchased clothing, furniture, and other household effects far beyond their means. The defendant likewise persisted in activities that could only accelerate the arrival of the parties in the divorce court.

The parties have acquired considerable real estate, some of which is heavily encumbered. The defendant's business is a growing one and his personal earnings have increased as the business progressed. There is evidence that the business had been losing money immediately prior to the trial. There is no evidence that the condition was unusual, or that it would continue. Defendant continued to draw $700 monthly from the agency during

this period. The record shows also that defendant purchased a $3,800 bookkeeping machine during the time a book loss was shown by the agency records.

The evidence shows that plaintiff is a suitable person to have the care and custody of the two minor children. The allowance for the support of the minor children is in accordance with the standards of living of the parties. That part of the decree dealing with the minor children is in all respects affirmed. The alimony allowed the plaintiff is increased to $32,000, payable $250 per month beginning July 1, 1954, and to continue monthly until fully paid. That part of the decree of the trial court relating to the occupancy of the family home is approved as made. An attorney's fee of $3,000 was awarded the plaintiff by the trial court. An additional fee of $1,000 is allowed the plaintiff for the services of her attorneys in this court. The cross-appeal of the defendant has no merit. Every issue therein raised is disposed of by the rulings in plaintiff's appeal. Except as herein modified, the decree of the district court is affirmed.

AFFIRMED AS MODIFIED.