MYRTLE ROACH, APPELLANT AND CROSS-APPELLEE, V. MELVIN ROACH, APPELLEE AND CROSS-APPELLANT.

117 N. W. 2d 549

Filed October 26, 1962. No. 35177.

Robert M. Harris and Martin, Davis, Mattoon & Matzke, for appellant.

W. H. Kirwin, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

Plaintiff, Myrtle Roach, by an amended petition, sought a divorce from the defendant, Melvin Roach. The trial court granted a divorce to the plaintiff and made a division of property and other allowances to the plaintiff. The plaintiff has appealed, asserting that the allowance of alimony and the division of property is wholly inadequate. The defendant has cross-appealed, asserting that the trial court erred in allowing an at-

torney's fee to plaintiff's counsel in view of section 23-1206, R. R. S. 1943.

The parties were married on June 3, 1933. Two children were born of the marriage, both of whom are of age and married. The evidence is sufficient to sustain the granting of a divorce and there is no issue raised on that question by this appeal. The parties moved to Kimball County in 1947 where they engaged in farming and ranching. They purchased a farm in Kimball County containing 640 acres, which is referred to in the record as section 15. The defendant also held a school land lease on the adjoining section 16 which appeared to be in default of the amount due thereon at the time this suit was tried. In 1948 they acquired a second farm of 640 acres in Kimball County which is referred to in the record as section 23. In 1958 the parties purchased a tract of land in Banner County containing 5.29 acres on which they operated a night club or dance hall, which is designated in the record as Lost Park.

On April 29, 1960, the parties sold section 15 to Arthur and Melva Heim for $25,600. Melva Heim is a daughter of Myrtle and Melvin Roach. The contract provided that the purchasers were to assume the $8,000 mortgage on the land and the balance of $17,600 was to be paid in annual installments of $1,000 commencing in 1968 and bearing interest at 2 percent per annum. The installments were to be divided equally between Myrtle and Melvin Roach when paid.

In April 1960, the parties sold a one-half interest in Lost Park to Eldon and Carol Garver for $5,000, Carol Garver being a daughter of Myrtle and Melvin Roach. The purchase price was to be paid in annual installments of $500, all of which were to be paid to Myrtle Roach.

Oil was discovered on section 23, which resulted in the drilling of 9 producing wells. The royalties at one time produced a much larger income than at the time of trial, but they had materially decreased because of oil depletion at the time the case was tried. The mar-

ket value of these royalties and the mineral interests reserved in sections 15 and 23 are not important here in view of their equal division between the parties by the trial court, which this court will not disturb.

During their farming operations the parties acquired much farm equipment consisting of tractors, trucks, plows, drills, combines, and other farm machinery. There is evidence that a part of this machinery was sold to Eldon Garver for the sum of $7,500. It is contended by Garver that this sale contract was terminated by mutual agreement. It is admitted that two tractors one of which is included in this sale agreement were sold for $6,315.92 and the proceeds applied in part to the payment of a joint note signed by Myrtle and Melvin Roach and other items of expense. The remainder of these proceeds amounting to $2,231 was held by agreement for the court's disposition.

By agreement of the parties the trial court appointed a receiver to collect and sell all farm equipment belonging to the parties. The receiver complied with the duties imposed on him and reported the net proceeds from this sale in the amount of $4,492.47.

There is evidence in the record that Myrtle and Melvin Roach sold certain farm machinery and equipment to Arthur Heim in 1957 for the sum of $7,150, payable $1,000 on or before December 31, 1957, and $1,000 each year thereafter until paid. There appears to be a dispute between Melvin Roach and Arthur Heim as to the amount remaining due, if any, on this contract, although it appears that at least $1,000 has been paid thereon.

There is evidence that Myrtle and Melvin Roach were the owners of approximately 80 head of cattle in early 1960. The evidence is that all cattle belonging to the parties were sold to a livestock company. On August 27, 1960, the actual amount still being held by the livestock company is $4,226.50. No other cattle were shown to exist which would be subject to consideration by the court in this action.

The parties agreed that plaintiff was to have the 1959 Oldsmobile automobile, a boat and motor, and a trailer house, owned by the parties subject to liens thereon, and defendant was to have other trucks and pickups owned by them. We will not disturb the contractual disposition of this personal property.

There is considerable evidence in this record concerning the sales of wheat raised on section 23 and under two Colorado leases. An interest in the wheat produced on the leased ground in Colorado is claimed by Eldon Garver. The actual ownership of this wheat cannot be determined from the record before us. The wheat raised on section 23 and its whereabouts or disposition is not made clear in the more than 1,800 pages of testimony we have before us. Some of it was in storage and subject to a government loan. Some was "penalty wheat" which required the deduction of penalty payments to the government. Some of it was damaged during farm storage and produced a very low price. The proceeds were used largely to pay expenses, taxes, and other indebtedness. Some of the proceeds appear to have been paid to Myrtle Roach, which money she contends was used in payment of their mutual obligations. The evidence shows that the wheat ground on section 23 had been placed in the soil bank program in 1959 for which an annual payment of $4,183.90 was being received from a government agency. Two such annual payments had been made at the time of trial on the 10-year soil bank program.

The record shows that there were 150 tons of hay on section 15 and 20 tons on section 23 belonging to the parties at the time of trial. There appears to have been a large number of farm tools and appliances left on section 15, some of which had been sold at public auction and accounted for by an auction company. The furniture on section 15 and some appliances from Lost Park were taken by Myrtle Roach and the remaining personal property at Lost Park was retained by Melvin Roach.

There are taxes and other obligations of the parties remaining unpaid.

There is evidence that Myrtle Roach inherited a tract of land in Texas. Its nature and value are not shown. The nature of the Lost Park operation is shown by the record, but the profit therefrom is speculative. The gross income from the Saturday night dances approximates $400 per dance, but the net income is not shown. There is much testimony in the record concerning the operations of the parties from 1958 to the time of trial. The keeping of books and records by the parties appears to have been of minor concern. The memories of the parties as to their business transactions are faulty. The sales of real estate and farm equipment to their sons-in-law, and the advancements of money in aiding them to get started in their farming operations, appear to have created confusion in valuing the joint assets of these parties.

At the time of this marriage the parties had few if any tangible assets. By their joint endeavors they accumulated the property they now have. The plaintiff, admittedly, worked in the fields and performed other physical labor when the occasion required. Their children are of age and married. Plaintiff is not able to sustain herself, although she has ability as a seamstress. The case appears to be one requiring an approximately equal division of the jointly-owned property. Phillips v. Phillips, 135 Neb. 313, 281 N. W. 22; Eno v. Eno, 159 Neb. 1, 65 N. W. 2d 145.

The plaintiff complains of the inadequacy of the allowance made and particularly of the alleged failure of the court to consider her immediate needs. In considering these contentions, after a review of the evidence, we think that plaintiff is entitled to a division of property and an award of alimony as follows: The plaintiff is to have all right, title, and interest of the parties in section 15, including the contract of sale to Arthur and Melva Heim. Plaintiff shall also take any and all in-

terest, if any, in the school land lease on section 16, including any proceeds therefrom for improvements in case of the forfeiture or voluntary termination of such lease. Plaintiff is awarded all household goods belonging to the parties located on section 15 and all such in her possession at the time of trial. Plaintiff is awarded the 1959 Oldsmobile automobile, the boat and motor, and the house trailer. Plaintiff is awarded a one-half interest in all oil, gas, and mineral leases or royalties on all properties owned by the parties or either of them at the time of trial. Plaintiff is awarded one-half the proceeds from the sale of cattle to the Morrison Livestock Commission Co., which amount is retained by it pending the decision of this case. The Texas property inherited by plaintiff is awarded to plaintiff. In addition thereto plaintiff shall have a judgment for alimony in the amount of $25,000, payable $1,000 on the effective date of this decree and $200 on the first day of each month thereafter until such judgment is paid. Execution is awarded for the collection of any delinquent payments on this judgment.

The defendant is awarded all the remainder of the assets of the parties, subject to the obligations of the parties incurred prior to July 8, 1960, including the $235 attorney's fee owing to Holtorf & Hansen. Such assets are to include the remaining real estate and personal property including choses of action. The obligations to be assumed by defendant are not to include the personal expenses of the plaintiff incurred during the pendency of this suit, other than those specifically allowed.

This decree includes any amount claimed by plaintiff as temporary alimony or support money. The costs of this action are taxed to the defendant including an attorney's fee of $350 for the services of plaintiff's attorney in this court.

On cross-appeal the defendant contends that plaintiff's counsel is not entitled to the award of attorney's fees made to him in the district court in the amount of

$1,750, for the reason that it is barred by section 23-1206, R. R. S. 1943. This section of the statute prohibits a prosecuting attorney from participating in a civil action depending upon the same state of facts upon which any criminal prosecution, commenced or prosecuted, shall depend. Plaintiff's attorney was the deputy county attorney of Scotts Bluff County. In the trial of the divorce action, evidence was adduced in an attempt to show adultery on the part of defendant as a ground for divorce. The crime was not established, and the trial court so found. It is the contention of the defendant that under this statute a prosecuting attorney is prohibited from accepting attorney's fees in any civil case where an attempt is made to show facts which, if established, would constitute a crime under the laws of this state.

The evidence adduced related to an act of adultery in Banner County. There is no evidence pertaining to such an offense in Scotts Bluff County. There is no evidence that a criminal prosecution for adultery was commenced, prosecuted, or investigated in Scotts Bluff County. The defendant relies upon Ress v. Shepherd, 84 Neb. 268, 120 N. W. 1132, but a reading of that case will show that the factual situation was much different than in the case at bar. In Thompson v. Thompson, 151 Neb. 110, 36 N. W. 2d 648, this court held that the purpose of section 23-1206, R. R. S. 1943, is to protect the public by making certain that the duties of county attorneys are not influenced by private interest. We fail to see how any conflict of interest could arise when the crime sought to be established occurred in a county other than where the civil suit was filed. We think the trial court properly overruled the objection of the defendant to the participation of plaintiff's counsel and the allowance of attorney's fees for his services.

The decree of the district court awarding a divorce to the plaintiff is affirmed. The award of alimony and division of property decreed by the district court is

modified in accordance with this opinion, and as so modified it is affirmed.

AFFIRMED AS MODIFIED.