ELIZABETH STRASSER, APPELLANT AND CROSS-APPELLEE, V. HAROLD G. STRASSER, APPELLEE AND CROSS-APPELLANT.

44 N. W. 2d 508

Filed November 3, 1950.   Nos. 32795 and 32803.

*Gross, Welch, Vinardi & Kauffman,* and *B. J. Cunningham,* for appellant.

*Suhr, Pierce & Cronin,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for divorce by Elizabeth Strasser, plaintiff, against Harold G. Strasser, defendant. In the action Harold G. Strasser filed an answer and cross-petition wherein he asked for a divorce from the plaintiff. After trial a decree was entered in favor of plaintiff. The parties separately appealed from the decree. The two appeals were consolidated for hearing here and in the briefs have been treated as an appeal and cross-appeal in the same action.

The basis of the appeal of the plaintiff is that the decree awarded her an insufficient amount of property and money as alimony and an insufficient amount as attorneys' fees for her attorneys.

The basis of the cross-appeal, as it shall be termed herein, is a claim that plaintiff's evidence did not sustain a right to a divorce in her favor, that the evidence sustained the right of defendant to a divorce from plaintiff, and in case it should be found that plaintiff is entitled to a divorce from the defendant that the amount of property and money awarded to her as alimony is excessive.

The parties at the time of the marriage lived in the State of California. They were originally married in

Yuma, Arizona, in 1936. On account of a thought that the marriage was invalid because of the shortness of time after a divorce of plaintiff obtained in California the parties were again married in Reno, Nevada. The second marriage took place in 1941. No children were born of the marriage. At the time of the separation plaintiff was about 44 years of age and the defendant 47. The parties lived in California until 1941 when they came to Grand Island, Nebraska, to live. Grand Island has since that time been their residence. Until they came to Nebraska neither of the parties had any consequential amount of money or property. At the time of the marriage the parents of the defendant were both living. Their home was in Grand Island. The father of defendant died intestate in 1940. He left an estate of very considerable value. After the death of the father, defendant succeeded to a one-half interest in the estate. Later, apparently in 1942, his mother died intestate and on her death he succeeded to the entire estate of his mother which included what then remained of one-half of the father's estate to which she had succeeded on his death.

On coming to Grand Island in 1941 it inferentially appears that the defendant took over with his mother the management of the estate left by the father. The evidence indicates that plaintiff participated in considerable degree in the management of the estate until July 1947 when the parties finally separated. On the death of his mother the defendant took over the entire management of the estate.

In her petition the plaintiff made numerous charges of misconduct against the defendant which she contends entitle her to a divorce. In his answer the defendant denied the charges and in his cross-petition he made numerous charges of misconduct against the plaintiff which he contends entitle him to a divorce from plaintiff.

No good purpose could be served by enumerating all of these charges and counter-charges herein. Only such

incidents as require consideration herein will be pointed out.

Each of the parties has attempted substantially to show that the use of intoxicating liquors by the other was an incident which with other incidents constituted grounds for divorce. As to this there is justification for a statement that there is some evidence of excessive use of intoxicating liquor but there is no indication that this in any way disturbed the marital relations of the parties.

There is evidence of assault by each upon the other. As to these instances the evidence is in irreconcilable conflict. Each charges the other with responsibility for the several encounters. No safe or satisfactory disposition of this subject may be made on a trial de novo here unless it be by resort to what was apparently the finding of the trial court and the rule of law which requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion but which permits the court in determining the weight of the evidence, where there is an irreconcilable conflict on a material issue, to consider the fact that the trial court observed the witnesses and their manner of testifying. Fisher v. Standard Investment Co., 145 Neb. 80, 15 N. W. 2d 355; W. L. Phillips Sons v. Northwest Realty Co., 152 Neb. 808, 43 N. W. 2d 6.

Whether the trial court found in favor of plaintiff with reference to this phase of evidence does not appear. The court did apparently however find generally in favor of plaintiff on her charges against the defendant.

There is evidence that each of the parties on occasions vulgarly addressed the other but there is nothing to indicate that these outbursts seriously disturbed the marital relationship. There is no indication that they had a causal connection with the ultimate separation.

The plaintiff charged the defendant with an unnatural and abnormal sex attitude toward her. This phase of

her complaint has been testified to by her but the testimony stands without corroboration within the meaning of law. Section 42-335, R. S. 1943, provides as follows: "No decree of divorce and of the nullity of a marriage shall be made solely on the declaration, confessions or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that purpose." See, Christensen v. Christensen, 144 Neb. 763, 14 N. W. 2d 613; Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148; Green v. Green, 148 Neb. 19, 26 N. W. 2d 299; Nuss v. Nuss, 148 Neb. 417, 27 N. W. 2d 624.

It is pointed out in these cited cases that no particular form or type of corroboration is necessary to satisfy the statute but that each case must rest upon its own facts in this respect.

Presumably within the allowable latitude indicated by the decisions cited the plaintiff insists that the record discloses sufficient corroboration. The corroboration insisted upon is a claimed indecent advance of defendant toward a witness who testified, an alleged indecent conversation with another witness at a time and place far removed from plaintiff, and the possession of indecent literature and pictures by the defendant. These things we cannot regard as sufficiently connected with the testimony of plaintiff as to amount to corroboration.

Further as bearing on the credibility of the testimony of plaintiff in this connection it appears proper to direct attention to the fact that she testified that the claimed attitude of the defendant manifested itself soon after the marriage in 1936 and persisted thenceforth. It does not appear that this was regarded by her as a cause for separation or divorce until the petition was filed herein.

It is apparent that from the viewpoint of plaintiff the cause of the separation and the occasion for the filing of the petition for divorce was alleged absences from home of the defendant and his association with another woman.

There is ample evidence, if it is to be believed, to sustain this charge. In the light of the evidence in this regard on its face, the surrounding circumstances, the character of the denials, and the lack of evidence to sustain them it appears that this evidence is worthy of belief. It seems apparent that as to this irreconcilable evidence the trial court accepted the version of the plaintiff rather than that of the defendant.

The defendant charged that plaintiff was also guilty of association with other men and to such an extent and degree as to entitle him to a divorce from plaintiff.

There is no evidence of any such association which appears to have come to the attention of defendant before the separation. As to incidents occurring before the separation there is evidence from a witness who at the time of the trial was friendly to the defendant and unfriendly to the plaintiff that the plaintiff had made improper proposals to him. This witness said that he refused to respond to the proposals. Of course this is denied by plaintiff.

There is evidence which establishes that after the separation there were occasions when the plaintiff was found in the company of men and some evidence that on occasions she engaged in conduct which would not meet polite approval. The evidence however does not indicate or justify a reasonable inference that on these occasions she went beyond mere indiscretion. Had there been anything more, a reasonable inference to be drawn from this record is that the defendant would have had evidence of that fact.

It factually appears that the defendant through paid informers had advance information of the three outstanding incidents complained of. One of the informers was a participant on one of the occasions and he gave evidence only of drinking of intoxicating liquor and of improper proposal by plaintiff to which he did not respond. On another occasion she doubtless was followed. Nothing tangible appears except that it is suggested

that she was improperly attired and that she became intoxicated. Her attire was what was referred to by her as a play suit. The third of these three occasions was a date made for a call upon her by a man in the evening after she had returned in the morning from a hospital. As to this instance there is no evidence whatever of any wrongdoing. There is no authentic evidence that the proposed call was made.

We conclude therefore that the defendant has failed to sustain a cause of action for divorce against the plaintiff. On the other hand we conclude that plaintiff by her evidence has sustained her right to a divorce from the defendant.

The plaintiff contends that she was allowed by the decree an insufficient amount of money and property as permanent alimony and a further insufficient amount as fees for her attorneys. She was awarded the property which had been occupied by the parties as a residence of the value of from $10,000 to $12,000; the furniture and household goods therein with certain exceptions; all policies of life insurance on her life free of encumbrances thereon; articles of jewelry some of which were designated; a Chrysler New Yorker automobile subject to encumbrances thereon; the equipment of a beauty shop which had been operated by her in the Mayfair Hotel which is one of the properties belonging to the defendant; and $26,000, payable in annual installments, the first being $6,000 on February 1, 1950, the others $5,000 each until the total sum is paid. The value of the total of the allowances to plaintiff is not capable of exact determination but it is probably of about $50,000. The defendant was charged with the costs of the action and attorneys' fees of $1,600 which was to be in addition to $400 already paid.

The defendant was decreed to be entitled to all other property including title to about 2,240 acres of ranch land title to which stood in the name of plaintiff.

Plaintiff insists that the alimony award departs un-

favorably to her from the following pronouncement of of this court which she contends contains proper controlling criteria in the fixing of alimony in actions for divorce:

"In determining the question of alimony or division of property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property they owned at the time of the divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto and, from all the relevant facts and circumstances relating thereto, determine the rights of the parties and make an award that is equitable and just." Nickerson v. Nickerson, 152 Neb. 799, 42 N. W. 2d 861. See, also, Ristow v. Ristow, 152 Neb. 615, 41 N. W. 2d 924.

Taking into consideration these criteria we find, as already observed, that in the first instance neither of the parties brought much property to the marriage. Between 1940 and the date of the separation defendant came into possession by inheritance of a large estate. As to the value of the inheritance at the times received the record presents no reliable information. The estate did however consist of a considerable amount of ranch and farm lands, business and residence properties, and doubtless some personal property. Most if not all ranch land was in Nebraska. The farm lands were in Nebraska and other states of the Union and in Canada. After the defendant acquired control of the estate portions of it were sold and other property acquired. On

the ranch land, operations in cattle were carried on. One of the properties acquired was a hotel in Grand Island, Nebraska, known as the Mayfair. This was renovated, refurnished, and operated. This operation appears to have been highly profitable. It may well be said that it is reasonably inferable that all of the operations with regard to the entire estate were profitable. It is also reasonably inferable that the estate was of considerably greater value at the time this case was tried than at the time of original acquisition. Of course some of the increased value is attributable to general appreciation of values over the period.

There is little doubt that the plaintiff made a substantial contribution to the profitable handling of the estate, especially the hotel, the ranching operations, and the disposition of certain properties.

While as has been pointed out there has been a marked appreciation of the value of the estate of the defendant since 1941 when he took charge not even a fair approximation of the increase may be ascertained from the record. No books or comprehensive records were kept of the transactions or operations, not even of the hotel. The record discloses that a certified public accountant was engaged for more than a year without success in an effort to bring a semblance of order out of this confusion.

While it has not been possible to ascertain anything approaching an approximation of the value of the estate at the time of acquisition or its increase thereafter it was possible to arrive at some estimates of its value at the time of trial. It appears that all personal property was reasonably of the value of $153,186.65; that the estimated value of the real estate and personal property was $499,906.65 to $554,006.65; and that the liabilities were $156,413.92. The estimated net value of the estate therefore was from $343,492.73 to $397,592.73.

Taking into consideration the facts as reflected by the record and the foregoing quoted portion of the opin-

ion in Nickerson v. Nickerson, *supra,* it is the conclusion of this court that the award made by the decree to plaintiff as permanent alimony is insufficient.

We conclude that all provisions of the decree with regard to alimony and disposition of property should be affirmed except the amount of $26,000 payable to plaintiff which shall be increased to $75,000 and that instead of the amount being payable in installments that she have judgment therefor. The decree is modified accordingly.

We conclude also that the amount allowed as fees for plaintiff's attorneys is insufficient.

In Hemmer v. Metropolitan Life Ins. Co., 133 Neb. 470, 276 N. W. 153, it was said: "A reasonable attorney fee in any proceeding is to be determined by the nature of the case, the amount involved in the controversy, the results obtained, and the services actually performed therein, including the length of time necessarily spent in the case, the care and diligence exhibited and the character and standing of the attorneys concerned." See, also, Darnell v. City of Broken Bow, 139 Neb. 844, 299 N. W. 274, 136 A. L. R. 101.

In the light of this pronouncement and the pertinent application of information contained in the record it is concluded that the defendant should pay a fee for plaintiff's attorneys for their services in the district court and this court in the amount of $9,600 which is in addition to the $400 already paid. The decree is modified accordingly.

The decree of the district court as modified is affirmed.

AFFIRMED AS MODIFIED.