RUTH B. MCNAMEE, APPELLEE, v. JOHN C. MCNAMEE, APPELLANT.

47 N. W. 2d 383

Filed April 12, 1951. No. 32958.

*Hubka & Hubka,* for appellant.

*Sackett, Brewster & Sackett,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action for divorce brought by Ruth B. McNamee, plaintiff, against John C. McNamee, defendant. At the conclusion of the evidence and argument of counsel, defendant's counsel moved to amend his answer and file a cross-petition instanter, praying for a divorce from the plaintiff and for the custody of Jerry John McNamee, a minor son of the parties. The trial court granted the motion. The trial court entered its decree finding generally in favor of the defendant and against the plaintiff; granted the defendant a divorce from the plaintiff on his cross-petition; awarded to the plaintiff the custody and control of two minor children of the parties, Norma Jean McNamee and Jerry John McNamee; awarded an amount to be paid by the defendant for the support of the minor children; and made a property settlement between the parties.

The defendant, cross-petitioner, filed a motion for new trial alleging the decision of the court was contrary to the evidence and the law. He objected to the property settlement on the ground that it was excessive under

the evidence, and further objected to the amount awarded the plaintiff for child support as being excessive and unreasonable based upon the earning capacity of the defendant. Upon the hearing on the motion for new trial, the trial court altered and modified the original decree with reference to the property settlement, and overruled the motion. The defendant, cross-petitioner, appeals.

For convenience we will refer to the parties as designated in the district court.

The plaintiff contends that because of the failure of the defendant to raise the question of the custody of the minor child, Jerry John McNamee, in his motion for new trial, the custody of the child is not a matter to be considered and determined by this court. We are not in accord with the plaintiff's contention in such respect.

An appeal lodged in this court from a decree rendered in a divorce action brings the case here for trial de novo on the record made in the district court. See, § 25-1925, R. R. S. 1943; Lippincott v. Lippincott, 141 Neb. 186, 3 N. W. 2d 207, 140 A. L. R. 901; Nickerson v. Nickerson, 152 Neb. 799, 42 N. W. 2d 861.

The record discloses that the plaintiff was previously married, and by that marriage had a child, Wayne D. Hurtie. She divorced her first husband in 1929. She married the defendant on September 10, 1930, at Burchard, Nebraska. Her child at that time was three years of age. The plaintiff and defendant have three living children, Evelyn Ruth Miller, married to Carlton Miller on March 20, 1948; Norma Jean, born August 28, 1934; and Jerry John, born July 17, 1947.

The plaintiff has been employed by the Nebraska State Home for a year and a half. Her net salary is $117.90 a month. She lives in a rented apartment with the two children. She has no source of income or interest in property except what she may be found to be entitled to in a property settlement. The defendant has been

employed in highway construction, the building of ponds, and general work in removing dirt. His pay averages $140 to $145 a month.

In 1937, the parties moved to Beatrice, and have lived in various houses there. They purchased a home on North Fifteenth Street which they sold, and with the proceeds and by a loan, built a new home into which they moved about the middle of January 1950, and lived there until plaintiff filed suit for divorce on March 8, 1950. This home was sold. The mortgage and certain indebtedness of the defendant were paid, and the balance of the proceeds of the sale is in the custody of the clerk of the district court until the final adjudication of the cause.

The plaintiff testified that the defendant struck her with his fist in February 1949, she having returned late the night before after she had taken the children to a picture show. On this occasion he broke her arm. She further testified that in October 1949, he tried to choke her, that he threatened her on occasions with a butcher knife, and used vulgar and profane language toward her. He falsely accused her of being unfaithful without cause or provocation. He mistreated her son by a former marriage, stating that he was too dumb to learn to handle a tractor and road machinery. He used vile and vulgar language toward his daughter Norma Jean. He forced her to sell the house on North Fifteenth Street by threatening her with a butcher knife.

The evidence in behalf of the defendant is a denial of the plaintiff's testimony with reference to threatening her with a butcher knife. This evidence is corroborated by his eldest daughter and son-in-law who lived with the parties part of the time in the North Fifteenth Street house and in the new house, having a basement apartment in the latter. When the parties lived in the North Fifteenth Street house the plaintiff required the defendant to sleep in a small anteroom off the kitchen. At other places where they resided she required him to

sleep in the basement on a cot, with mover's blankets for bed covering. She denied him the privilege of using the bathroom facilities. He prepared his own breakfasts, ate his lunch downtown, and at times had his supper at home. During the period they lived in the new house he was served 24 evening meals. His meals were served to him in the basement by his son-in-law or his daughter Norma Jean. The plaintiff denied him the privilege of using the upstairs rooms of the house, and on occasions during the past three years when he did, he was required to remove his shoes and wash his feet. All of the family were required to remove their shoes when in the home. When he asked to come upstairs the door was held against him or blocked in such manner that he could not enter. The difficulties between the parties have been over a period of ten years, but more pronouncedly since 1946, when the plaintiff was pregnant with Jerry John. After the birth of the child she had no family relations with the defendant for the reason that, she stated, he had lost his manhood and was incapable of carrying on marital relations. She made reference to him in this respect by the use of vulgar language.

The evidence is in preponderance that the plaintiff, in the presence of her eldest daughter, her son-in-law, and the two minor children, quarreled with the defendant, called him profane, vile, and vulgar names, and nagged at him until he would retaliate and curse her. The plaintiff does not deny that she referred to her husband in such manner. This was a constant occurrence. He denied that he broke her arm or attempted to assault her by striking her, but testified the plaintiff was the aggressor and he sought to stop her from fighting with him and endeavored to make up with her, but without success. The daughter, Norma Jean, made reference to her father in a profane manner, showing lack of affection and respect for him on her part. There is no complaint that the defendant did

not support his family and furnish them with necessities of life to the best of his ability.

We deem further statement of the facts on this phase of the case unnecessary.

This brings us to that part of the court's decree awarding the custody of Jerry John McNamee to his mother, the plaintiff.

This state is constructively a party to a divorce action, and children involved in such action are wards of the court. The ultimate decisions as to the children must be made from the standpoint of their best interests. See, Wassung v. Wassung, 136 Neb. 440, 286 N. W. 340; Hanson v. Hanson, 150 Neb. 337, 34 N. W. 2d 388; In re Application of Reed, 152 Neb. 819, 43 N. W. 2d 161.

In awarding the custody of minor children, the court looks to the best interests of the children, and those of tender years are usually awarded to the mother. Other considerations being equal, it is usual to award the custody to the innocent spouse. See, Bath v. Bath, 150 Neb. 591, 35 N. W. 2d 509; Swolec v. Swolec, 122 Neb. 837, 241 N. W. 771.

"Custody of a child of tender years should be awarded the mother, unless it is shown that she is unsuitable or unfit to have such custody, or through some peculiar circumstance is unable to furnish a good home." Hanson v. Hanson, *supra*.

The court in determining the custody of a child may consider the character and resources of the parents, their fitness, temperamental and otherwise, and the advantages which may be expected to accrue to the child in the event that the custody is given to either of them. See, In re Application of Reed, *supra*; Sheehy v. Sheehy, 88 N. H. 223, 186 A. 1, 107 A. L. R. 635.

With regard to the care, custody, and control of their small child, it was said in Gorsuch v. Gorsuch, opinion on motion for rehearing, 143 Neb. 578, 11 N. W. 2d 456: "The proper rule in a divorce case, where the custody

of minor children is involved, is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents."

It appears from the record that Jerry is nearly four years of age at this time. When Jerry was in the house, the plaintiff compelled him to sit in a chair for long periods of time, apparently so that he would not scratch the furniture or muss up the house. He was denied the privileges of the home to play in, which is necessary for a normal boy of his age. It is clear from the evidence that the plaintiff used vile, profane, and vulgar language in the presence of this child and the family, and that she exhibited temperament and an uncontrolled temper on several occasions. It is likewise clear that the manner in which she treated the defendant could and would destroy Jerry's respect, love, and affection for his father. It also appears from the evidence that the plaintiff, during the pendency of the action, denied the defendant the right to visit the child which caused him to resort to law enforcement officers to exercise this right. Defendant's daughter, Norma Jean, also denied him the privilege of visiting Jerry and closed the door against him. She testified she did so because Jerry was ill.

The plaintiff is employed, and during the daytime it is necessary that Jerry be placed in the custody of strangers. The record is void as to any adequate arrangements having been made in this respect. It does appear from the evidence that the eldest daughter, the mother of two small children with whom the defendant lives and pays for his board and lodging, had the custody of Jerry approximately two months during the pendency of the action. She testified that Jerry did not mind, he did seem to want to play with other children, and she had no trouble with him. She further testified that she would assist if the court granted the

defendant the right to have him over weekends in her home.

We believe, in the light of the evidence, that the plaintiff is an unsuitable and unfit person to have the care, control, and custody of the child, Jerry John McNamee, and under the circumstances is unable to furnish him a good and proper home.

Section 42-312, R. S. 1943, provides: "If the circumstances of the parties shall change, or it shall be to the best interests of the children, the court may afterwards from time to time on its own motion or on the petition of either parent revise or alter, to any extent, the decree so far as it concerns the care, custody and maintenance of the children or any of them."

It is observable from this provision of the statute that while the divorced parents are granted the right to petition for change of custody, care, and maintenance of the minor children, at the same time the court is granted the right to exercise control thereover, that is, the court has continuing jurisdiction over the custody of children. See Harris v. Harris, 151 Neb. 191, 36 N. W. 2d 849.

The defendant testified that he would furnish Jerry John McNamee a good and proper home, but there is no evidence to disclose that he is prepared to do so at this time. We conclude that the decree should be modified to award the custody of Jerry John McNamee to the defendant, conditioned upon the trial court making any further investigation as may be deemed necessary to ascertain and determine, in awarding the custody of this child, that which would be for the best interests of the child, and then make an appropriate order in such respect.

The child support awarded for Norma Jean in the amount of $35 a month until she graduates from high school or reaches the age of 18 years is not excessive or exorbitant. In view of our holding granting the custody of Jerry John McNamee to his father, the child support for him would not be payable to the

plaintiff, but the father would be obliged to furnish adequate support and provision for the child.

In deciding the question of alimony or division of property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties; their earning ability; the duration of and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property they owned at the time of the divorce, and whether the property was accumulated before or after the marriage; and any and all other circumstances bearing upon the question; and from all of such elements determine the rights of the respective parties. See, Green v. Green, 148 Neb. 19, 26 N. W. 2d 299; Kroger v. Kroger, 153 Neb. 265, 44 N. W. 2d 475; Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508.

We have taken into consideration the property of the parties, the value placed thereon as shown by the evidence, and the indebtedness of the defendant. It appears that the plaintiff, under the property settlement made by the court, would receive in property and money approximately $3,328.23. The defendant, when his indebtedness is subtracted from the gross amount awarded to him, would receive $2,867.12, not considering the possibility of a settlement of the chattel mortgage against the tractor for a less amount than $1,100. While there is no hard and fast rule in fixing the amount of alimony, we believe the amount awarded the plaintiff from the proceeds of the sale of the house is excessive. We conclude the plaintiff is entitled to and should be awarded $750 of the proceeds of the sale, and the balance of the same should be awarded to the defendant.

The plaintiff's attorneys are allowed attorney's fees in the amount of $150 for services rendered in this court, to be taxed as costs.

The decree of the district court is affirmed in all re-

spects except as to the property settlement and the custody of the minor child, Jerry John McNamee, and the district court is directed to enter judgment in conformity with this opinion.

AFFIRMED AS MODIFIED.