FERN GARNETT PARKER, APPELLANT, V. IRVEN C. PARKER, APPELLEE.

51 N. W. 2d 753

Filed February 15, 1952. No. 33029.

*Crosby & Crosby,* for appellant.

*Beatty, Clarke, Murphy & Morgan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action of divorce instituted by appellant on the ground of extreme cruelty inflicted upon her by appellee. He denied the charges of appellant and by cross-action sought a divorce from her on the claim that she had practiced extreme cruelty on him. The district court granted appellant a divorce, adjusted the

rights of each in the property accumulated by them during the marriage, reserved the matter of the custody of the minor children of the parties, dismissed the cross-petition of appellee, and denied the separate requests of the parties for a new trial.

The appellant complains that the award of money and property to her is legally unfair and inadequate, and that an insufficient amount was allowed by the court as compensation of her counsel. Appellee by cross-appeal presents the contentions that the evidence did not authorize the grant of a decree of divorce to appellant; that the proof entitled appellee to a divorce; and that the amount of property and money decreed to appellant is excessive.

The petition on which this case was heard and decided alleged generally that appellee had been guilty of acts of extreme cruelty toward appellant during much of the married relationship of the parties, and specifically that he had on many occasions urged appellant to remove from their home; that he did not desire to live with her; that he had no affection for her; that he was enamored with another woman; that his conduct had been cruel toward appellant; and that he had subjected her to the ridicule of her friends and neighbors. Appellant also charged that about the first of April 1950, appellee told appellant he would no longer live with her in their home; that he had a woman in North Platte that loved him; and that he then left the home of the parties and has not since offered or desired to return to and resume the marriage status with appellant.

The parties were married August 27, 1928. The age of each was about 20 years. They resided on farms and later on a ranch. They were hard-working, thrifty, and economical. They had very little assistance. Their farming operations were considerable, and grew and enlarged until the farming and ranching done by them was quite extensive. Appellant did the home work, cared for the children, kept a good home, and did many

kinds of work outside the home. She raised chickens, made and cultivated a garden, milked cows, attended the chores, and gave her attention and efforts to whatever there was to do—"Seemed like there was always something for me to do." They accumulated 2,160 acres of land and a herd of cattle appropriate to their ranch operations; and acquired machinery, trucks, automobiles, and equipment. They reconditioned and added to the improvements on the land they acquired. They have three well-trained, affectionate, and obedient sons.

The record indicates the parties from the time of their marriage until about the end of 1949 devoted themselves to hard work in a determined persistent plan to acquire and pay for property, almost to the exclusion of many of the indulgences usual to even rural life; and that they had few diversions and very infrequent recreation. They had many unpleasant and sometimes violent disagreements. It is not necessary to detail or attempt to evaluate the situation during those years closely and deeply enough to fairly ascribe the greater degree of blame to either. The obvious fact is that the relationship of the parties as the time of their marriage lengthened became rapidly and increasingly less desirable than what it should have been.

Appellee entered the employ of Farm Service Company of North Platte commencing with January 1, 1950, and took over the operation of it February 1, 1950. Appellant and the sons of the parties remained on the ranch. Appellee returned to the ranch generally each night and supervised the work there until about April 1, 1950.

After appellee became employed in North Platte he stayed away from home more, and when he did return it was later at night or early in the morning. He neglected and disregarded appellant; he was quarrelsome with and abusive toward her; and he would agree to accompany her to places such as dinner at the home of a friend, would not appear at the agreed time, but would some-

times come hours later, and sometimes would not come at all. His defaults were unexplained. Appellant, at the request of appellee, went to Ogallala and stayed at the home of her sister for several days in the early spring of 1950. When she returned she met appellee in Sutherland and accompanied him from there to their home. He showed no interest in her and exhibited no affection for her. This was about April 1, 1950—the night of Good Friday. He then told her about the other woman; how she liked him; that she was in North Platte while he came after appellant; and that he was supposed to take the other woman home. When they reached their home about 10:30 or 11:00 p. m., appellee left. He did not explain where he was going. They have not associated as husband and wife since.

Appellee told appellant about the other woman, who is identified in the record as Mrs. Olson; and that he took her from her home to the place where she worked, and accompanied her to lunch and from her work to her home at the close of the day. About the first of June 1950, he told appellant he was going to take Mrs. Olson to Colorado, and he later told appellant that he and Mrs. Olson had made that trip. He told appellant that they had been in Lincoln in May of 1950. The appellant and her sister saw Mrs. Olson and appellee traveling together when appellee was returning from a trip to Sterling, Colorado. They also saw appellee and Mrs. Olson come out and leave a cabin of the Highway Motel in North Platte about 8 a. m. on October 22, 1950.

Appellee and a woman occupied a cabin of the Highway Motel the night of July 6, 1950. He signed the guest register at the motel: "Name: Mr. and Mrs. Red Parker; Address: North Platte; License Number: 15-4542; Car Make: Pont." The woman was not appellant. She was never at the motel with appellee. He was sometimes known as Red Parker. His automobile was correctly described on the register. Appellee was at this motel, and rented and occupied a cabin with a

woman on 19 different times during July and August of 1950.

Appellee told a witness that he met this woman at Mac's 30 Club; that she asked him if he would dance with her, and he did; that she said her husband was getting a divorce; and on that occasion they "cried on each other's shoulders." He told the witness about his keeping company with her, the fact that she was 22 years old, and that "sometimes he felt rather foolish with her." Appellee on the trial of the case admitted that he had been keeping company with Mrs. Olson; that he made a trip to Denver with her; and that he told his wife he had not been "chasing with a woman. I had been around with a certain girl." There is additional evidence of the association of appellee with Mrs. Olson that need not be stated.

Appellee contends that the corroborative evidence is not sufficient in this case. A decree of divorce may not be granted on the uncorroborated declarations, confessions, or admissions of the parties to the case. § 42-335, R. S. 1943; Peterson v. Peterson, 153 Neb. 727, 46 N. W. 2d 126. But the doctrine in this jurisdiction is that a general rule by which to measure the exact amount or degree of corroboration required in a divorce case cannot be formulated, and each case must be decided on its facts and circumstances. Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508; Peterson v. Peterson, *supra*. The evidence of the misconduct of appellee constituting extreme cruelty towards appellant is sufficiently corroborated, and the trial court was correct in granting a decree of divorce to appellant and in denying the cross-petition of appellee. In Peterson v. Peterson, *supra*, this court said: "Extreme cruelty may consist of personal injury or physical violence, or it may be acts or omissions of such a character as to destroy the peace of mind or impair the bodily or mental health of the one upon whom they are inflicted or towards whom they

are directed, or be such as to destroy the objects of matrimony."

Appellee claims that the amount of money and property awarded by the district court is excessive. The rule for determining the question of alimony or division of property between the parties to a divorce case is well settled, has been recently restated, and need not be here repeated. Strasser v. Strasser, *supra;* Brudevold v. Brudevold, 153 Neb. 545, 45 N. W. 2d 443; McNamee v. McNamee, 154 Neb. 212, 47 N. W. 2d 383. The parties to this case at the time of their marriage had very little property. Appellant had taught school and had accumulated a small amount of money. Appellee had a few items of personal property and some cash. They put their money in a common account and their other property was considered and treated as joint property. All of the property owned by them when the controversy in this case arose, except the new automobile purchased by appellant with money borrowed from her father, was the result of their joint efforts and accumulations during their marriage. The award made to appellant is not excessive.

The judgment of the district court assigns all the real estate and all the personal property incident thereto and kept thereon, except 50 head of cattle and 2 bulls and the household goods, to appellee. It sets over and assigns the 50 head of cattle and 2 bulls to appellant. She is not under these circumstances equipped to keep, handle, or dispose of the animals given her by the decree reasonably or advantageously.

The conclusion is that all provisions of the decree of the district court should be affirmed except the provision awarding to the appellant the sum of $33,000; that said amount should be and is increased to $44,750, and that it should be and is adjudged to be paid to appellant within 60 days from the date of the mandate issued in this case; that the 50 head of cattle and 2 bulls assigned to appellant by the decree of the district court should be

and they are assigned and set over to the appellee; and that the judgment should be and is accordingly modified, and as modified, it is affirmed.

Appellee should be and he is ordered to pay, as compensation for the counsel of appellant for all services rendered in and concerning the controversy involved in this case in the district court and in this court, the total sum of $3,000, or an amount in addition to that required by the district court of $1,750, and that the costs should be and they are taxed to appellee.

AFFIRMED AS MODIFIED.