WILLARD T. KILLIP, APPELLEE, v. ADA NOLEN KILLIP, APPELLANT.

57 N. W. 2d 147

Filed February 20, 1953. No. 33245.

*Clarence M. Pierson* and *Donald J. Kroger,* for appellant.

*McKillip, Barth & Blevens,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

In this case both parties sought a decree of absolute divorce and the custody of their two small children, a

daughter 6 years of age and a son 4 years of age. After a hearing upon the issues presented by plaintiff's petition, defendant's answer and cross-petition, together with plaintiff's reply and answer thereto, the trial court rendered a decree. It awarded the custody and control of the children "temporarily" to plaintiff's mother, "subject to the further order of this Court, and conditioned on the right of reasonable visitation by the defendant, * * *." It awarded defendant $700 as alimony and as her share of the joint accumulations of the parties, payable $100 July 1, 1952, $100 January 1, 1953, and a like sum each July 1 and January 1 thereafter until paid in full, without interest except upon defaults. It awarded plaintiff their 1946 Chevrolet car and household goods, but taxed all costs to him, including $75 as fees for defendant's counsel.

Defendant's motion for new trial was overruled, and she appealed, assigning that the judgment was not sustained by the evidence but was contrary thereto and contrary to law. In that connection, defendant contended that she should have been granted the divorce together with custody of the children and an allowance for their support, and that the award of $700 as alimony and as her share of their joint accumulations was inadequate.

We affirm that part of the judgment awarding plaintiff a divorce and the allowance of $700 alimony to defendant, upon condition that no deductions shall be made therefrom for monthly support money ordered paid by this court which has accrued or been paid pending this appeal. However, we reverse the judgment in part and remand the issue of custody of the children for further hearing by the trial court as hereinafter prescribed. We remand such issue because an order for temporary custody such as made in this case tends to encourage hardship, unhappiness, and instability not only in the lives of the children but also in that of the parent who is entitled to their custody. Further, we

are unable to determine from the competent evidence now before us whether or not defendant, who we conclude was not shown to be an unsuitable or unfit person to have their custody, has made arrangements for a suitable home and for proper supervision and education of the children while she is employed in 'Lincoln. Upon a satisfactory showing that she has done so, the trial court should award defendant their custody and order plaintiff to pay a suitable monthly amount for their support, unless it is affirmatively established that since the trial defendant has become unsuitable or unfit to have their custody.

In that connection this court recently reaffirmed that: "In a divorce suit in which the custody of a minor child is involved, the rule is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents." Campbell v. Campbell, *ante* p. 155, 55 N. W. 2d 347.

In Hanson v. Hanson, 150 Neb. 337, 34 N. W. 2d 388, this court held: "The natural rights of the parents are of important consideration and, in the absence of special circumstances, the child or children should be awarded to the parent, or parents, as against more distant relatives or third persons.

"Custody of a child of tender years should be awarded the mother, unless it is shown that she is unsuitable or unfit to have such custody, or through some peculiar circumstance is unable to furnish a good home." See, also, Bath v. Bath, 150 Neb. 591, 35 N. W. 2d 509.

As early as Norval v. Zinsmaster, 57 Neb. 158, 77 N. W. 373, 73 Am. S. R. 500, it was held: "The statute and the demands of nature commit the custody of young children to their parents rather than to strangers, and the court may not deprive the parent of such custody unless it be shown that such parent is unfit to perform the duties imposed by the relation or has forfeited the right.

"The right of a parent to the custody of a child is not

lost beyond recall by an act of relinquishment performed under circumstances of temporary caprice or discouragement." As stated in the opinion: "The right of the parent is not lightly to be set aside, and it should not be done where unfitness is not affirmatively shown, or a forfeiture clearly established." Such rules are controlling here upon the question of custody.

We turn then to the question of whether or not defendant should have been granted a divorce for extreme cruelty by plaintiff. In that connection we have carefully examined the record and find therein no satisfactory evidence corroborating defendant's testimony with relation to the facts alleged in her cross-petition, as required by section 42-335, R. R. S. 1943. The controlling applicable rule is that: "A decree of divorce may not be granted on the uncorroborated declarations, confessions, or admissions of the parties to the case." Parker v. Parker, 155 Neb. 325, 51 N. W. 2d 753. See, also, Peterson v. Peterson, 153 Neb. 727, 46 N. W. 2d 126; Christensen v. Christensen, 144 Neb. 763, 14 N. W. 2d 613; O'Reilly v. O'Reilly, 120 Neb. 720, 234 N. W. 916. Upon such basis we conclude that defendant was properly denied a decree of divorce.

We are confronted then with the question of whether or not plaintiff was entitled to a divorce. It is elementary that divorce cases are tried de novo on appeal to this court, subject to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361.

In Parker v. Parker, *supra,* this court held: "Extreme cruelty may consist of personal injury or physical violence, or it may be acts or omissions of such a character as to destroy the peace of mind or impair the bodily or

mental health of the one upon whom they are inflicted or towards whom they are directed, or be such as to destroy the objects of matrimony."

Following the formal jurisdictional allegations, plaintiff's petition alleged substantially that defendant had been guilty of extreme cruelty in that she left the home furnished by him, concealed her whereabouts, and refused to reside with him; that she abandoned plaintiff and their children, compelling him to care for them; and that she failed, refused, and neglected to perform the household duties devolving upon a woman in the marriage relation. He also alleged as conclusions only that defendant had been guilty of other acts of extreme cruelty well known to her, which would be set forth particularly if required. In that connection, the rule is that: "If a decree is sought on the ground of extreme cruelty, the particular facts relied upon as constituting the cruelty should be alleged with reasonable certainty." Peterson v. Peterson, *supra*.

Further, plaintiff alleged *"that by virtue of the abandonment of the children as above forth,* the defendant is not a fit and proper person to have the care and custody and control of said minor children" (italics supplied), but that plaintiff, who had cared for them, is a fit and proper person to have their care, custody, and control, which should be awarded to him. It will be noted that plaintiff alleged but one reason for defendant's unfitness to have the custody of the children, to wit, that she had abandoned them, and that the trial court did not find that plaintiff was a fit and proper person to have their custody. Instead, the custody was "temporarily" given to the grandmother, doubtless anticipating a reconciliation, or that defendant would subsequently be able to show that she had made suitable arrangements for their care, supervision, and education, heretofore discussed.

Insofar as important here, there is evidence in the record disclosing that the parties were married in Las

Vegas, Nevada, on April 23, 1942, while plaintiff was in the army. They lived together part of the duration of his army service, but plaintiff was in England 2 years of that period, while defendant lived at Friend, Nebraska. Upon plaintiff's return in 1945, he had $700 or $800, and the parties lived first in one place then in another where plaintiff was employed, until about 2 years before the trial, when they moved into a small house on a 40-acre farm belonging to plaintiff's mother. Such house was located about 75 or 100 feet from the mother's house on the same farm. Plaintiff's father had started to build it for the parties herein, but his death intervened, so plaintiff and defendant completed it and moved in. Their investment therein is disputed, but we believe the evidence discloses that it was about $1,200 or $1,300. They paid no rent, but by arrangement with plaintiff's mother they operated the 40 acres on a 50-50 basis, with livestock belonging to plaintiff's mother and machinery formerly belonging to plaintiff's father. They also received their milk and eggs used in the household. In addition, plaintiff did outside carpenter and electrical work when opportunity afforded, and his entire income was about $2,000 yearly. At the time of the divorce plaintiff had $200 or $300 cash and a few small unpaid accounts due him. The parties also owned an old Chevrolet car and household goods inclusively worth about $1,000, plus the aforesaid investment in the house.

For clarity we will dispose of the question of alimony at this point. In Parker v. Parker, *supra,* this court held: "The court in deciding the amount of alimony or in making a division of property in a divorce case will consider the age of the parties, their earning ability, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, the physical condition of each, the property owned by them, and whether or not it was acquired by their joint efforts, and any other pertinent facts." In that connection, the earning ability of defendant is as

much or more than that of plaintiff. In addition, the record here discloses that effective July 1, 1952, this court ordered plaintiff to pay defendant $25 per month support money pending this appeal. We conclude that such sums shall not be deducted from the $700 alimony allowed by the district court, and that such total amount is a proper allowance for alimony. That is, defendant shall receive as alimony the $700 heretofore allowed by the trial court, without any deduction for such sum as will have accrued or been paid at $25 per month from July 1, 1952, to the date of mandate herein.

Serious marital difficulty began about 6 months before the divorce. Plaintiff's contention is that it occurred when defendant's affection for plaintiff cooled and she appeared to have become unduly friendly with their near neighbor, a single man about 26 or 27 years old. Concededly defendant was not guilty of any moral wrong, but her friendly association with such neighbor, most of which occurred in plaintiff's presence, caused gossip and aroused suspicion in the minds of plaintiff, his mother, and other members of the family, who gave vocal expression thereto. Most of such gossip and suspicion was based on fiction rather than facts, but there was some evidence which, if true, indicated that defendant was somewhat indiscreet at times. On the other hand, defendant denied any affection for such neighbor or that she ever associated with him unless plaintiff was present, except upon one occasion when they sat and visited a few moments in such neighbor's car directly in front of their home and that of plaintiff's mother. Concededly such neighbor was plaintiff's close boyhood friend, who had a big new car in which he took both plaintiff and defendant with him to shows and elsewhere. Defendant's contention is that before their marriage plaintiff promised that they would never live on a farm. She did not want to live on the farm. She did not like and was physically unable to do the chores and farm work demanded by plaintiff, who was not overly industrious,

and by his mother, who supervised everything. She claims that it was only because thereof and because she was nervous and ill that she was unable to perform her household work or look after her two children as efficiently as demanded.

Be that as it may, in September 1951, plaintiff went on a week-end business trip. When he returned, defendant and their little girl had gone away in plaintiff's car, leaving their little boy with plaintiff's mother. The car was found sitting in a yard in Beaver Crossing, with a friendly note from defendant appended to the ashtray. In substance it informed plaintiff that she was going to see her ill mother in Indiana, and told him to write her at a sister's given address. She said that she would like to have taken the little boy also, and urged plaintiff to take good care of him and not worry because she would take good care of the little girl, and would write upon arrival.

After waiting a few days and hearing nothing further, plaintiff sent a telegram to the address of defendant's sister and, receiving no response, called the sister, who informed him that defendant had not arrived. Worried and fearful, plaintiff then contacted the sheriff of Seward County and Lincoln police, who, about a week later located defendant and the little girl staying at her married sister's home in Lincoln. Plaintiff then went to the sister's home and stayed 2 or 3 days, where he talked to defendant, urging her to return to their home, but she refused, preferring to live and be employed in Lincoln. At that time, over defendant's protests but ultimately with her reluctant consent, plaintiff's sister took the little girl home with her and thence back to plaintiff's home, where both the little girl and boy have been cared for by plaintiff's mother and sister-in-law. Such persons are both women of character who have concededly given the children as good care and supervision as it is possible for a grandmother and aunt in their circumstances to give children of tender age, who

above all else need their mother.

In the meantime, defendant has visited the children twice at plaintiff's home, and in his sister's home at Seward, or elsewhere upon other occasions. At innumerable times, also, an average of twice a week or more, plaintiff has visited defendant in Lincoln, often taking the children with him, urging her to return with him to their home or to start life again together elsewhere, but she has consistently refused, saying that she wanted a divorce. At her request, they consulted lawyers in Lincoln who urged reconciliation to no avail, and plaintiff refused to sign a voluntary appearance in Lancaster County, but subsequently filed this action in Seward County. In such a situation we do not believe it could be said that plaintiff ever believed defendant was an unsuitable or unfit person to have the custody of their children.

We conclude that there was competent evidence, satisfactorily corroborated, sufficient to establish that defendant was guilty of extreme cruelty. Upon such hypothesis we conclude that plaintiff was entitled to a divorce, but under the circumstances we cannot conclude that defendant abandoned her children as alleged by plaintiff.

For reasons heretofore stated, we affirm that part of the judgment awarding plaintiff a divorce, together with that part of the judgment with relation to alimony, upon condition that no deductions shall be made therefrom for support money ordered paid by this court which has accrued or has been paid pending this appeal, but we reverse the judgment in part and remand the cause for further proceedings with regard to the care, custody, and control of the two minor children for decision, in conformity with that part of this opinion relating thereto. All costs are taxed to plaintiff, including $150 allowed for the services of the defendant's counsel in this court.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.